LYNN F. PICKLES *v.* LOUIS S. GOLDBERG,
COMMISSIONER OF MOTOR VEHICLES
(13656)

O'CONNELL, LAVERY and SCHALLER, Js.

Argued February 10—decision released June 27, 1995

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*David R. Babbitz,* with whom, on the brief, was *Daniel A. Lyons, Jr.,* for the appellee (plaintiff).

O'CONNELL, J. The defendant commissioner of motor vehicles (commissioner) appeals from the trial court's judgment reversing his decision to suspend the plaintiff's motor vehicle operator's license pursuant to General Statutes § 14-111 (c).[1] The defendant claims that the trial court improperly (1) found that the record did not support the conclusion that the plaintiff was operating her motor vehicle at an unreasonable speed, (2) concluded that the record did not support the conclusion that the plaintiff failed to keep her motor vehicle under proper control, and (3) found that the plaintiff was exempt from the requirements of the exit ramp traffic control signs. We reverse the judgment of the trial court.

On November 18, 1988, the plaintiff, an employee of the state department of transportation (DOT), was operating a nine ton capacity DOT dump truck traveling east on Interstate Route I-95 in West Haven. The truck was filled with loam, which the plaintiff was transporting to a landfill. Because she was unfamiliar with the area, the plaintiff followed another DOT truck to the landfill on her first trip. That truck exited I-95

---

[1] General Statutes § 14-111 (c) provides in relevant part: "SUSPENSION OF LICENSE AFTER FATAL ACCIDENT. The commissioner shall not suspend the license of any operator concerned in any motor vehicle accident resulting in the death of any person solely because such death has occurred, unless the facts as ascertained by the commissioner, after a hearing, indicate responsibility on the part of such operator for such accident, and, if, after such hearing, the commissioner finds that such operator has caused or contributed to such death through the violation of any provision of this chapter or of chapter 248 or through negligence or carelessness, such suspension shall be for not less than one year . . . ."

at exit 43, and the plaintiff followed. The ramp was clearly posted with two "No Trucks" signs. Despite the clear prohibition, the plaintiff used exit 43 on her second trip to the landfill.

On the second trip, as she turned onto the ramp, the plaintiff was unable to slow her vehicle enough to keep it under control. She went through a red light at the bottom of the ramp and was attempting to turn right onto Campbell Avenue when her truck overturned onto a car that was stopped at the traffic light, killing the driver.[2]

Pursuant to General Statutes § 14-111, a hearing was held on May 23 and July 18, 1991, at which the plaintiff was present and represented by counsel. The commissioner, acting through his hearing officer rendered his decision on August 17, 1991, concluding that the plaintiff was responsible for the fatality, and ordering that her operator's license be suspended for eighteen months.[3] The plaintiff appealed to the Superior Court, which sustained the appeal and reversed the commissioner's decision. The commissioner brings this appeal.

"Judicial review of the commissioner's actions is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted."[4] *Lawrence* v. *Kozlowski*, 171 Conn. 705,

---

[2] The plaintiff's conviction of negligent homicide with a motor vehicle in violation of General Statutes § 14-222a was affirmed by this court in *State* v. *Pickles*, 28 Conn. App. 283, 610 A.2d 716 (1992).

[3] The hearing officer concluded as follows: "That Lynn F. Pickles caused or contributed and is responsible for the death of Frank A. Giaimo in that she failed to keep her vehicle under proper control, in that she failed to obey the traffic control signage on I-95 exit ramp and in that she was operating at an unreasonable speed."

[4] Our Uniform Administrative Procedure Act is codified in General Statutes §§ 4-166 through 4-189. The standards for judicial review under the UAPA are set out in § 4-183 (j), which provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision

707, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant." *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986). "The 'substantial evidence' rule governs judicial review of administrative factfinding under [General Statutes § 4-183 (j)]. . . . Such a standard of review allows less room for judicial scrutiny than does the 'weight of the evidence' rule or the 'clearly erroneous' rule. . . . In determining whether an administrative finding is supported by 'substantial evidence,' a court must defer to the [commissioner's] assessment of the credibility of the witnesses and to the [commissioner's] right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations omitted.) *Briggs* v. *State Employees Retirement Commission*, 210 Conn. 214, 217, 554 A.2d 292 (1989). "[I]f there is evidence . . . which reasonably supports the decision of the commissioner, [the court] cannot disturb the conclusion reached by him." *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840 (1975). The primary concern on appeal is that the hearing was conducted in a fundamentally fair manner. *Briggs* v. *State Employees Retirement Commission*, supra, 218.

The commissioner first contends that the trial court improperly found that the record did not sustain the commissioner's conclusion that the plaintiff was oper-

of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

ating her vehicle at an unreasonable speed. We conclude that there was ample evidence to support the commissioner's conclusion.

The plaintiff testified that she thought she exited I-95 at about twenty-five miles per hour, the posted ramp speed. Her own expert testified that if the plaintiff had been traveling at twenty-five or thirty miles per hour at the top of the ramp, he believed that she would have been able to stop at the bottom. It is logical to extrapolate that, because she could not stop at the bottom of the ramp, the plaintiff was traveling faster than the posted speed limit, which is presumptively unreasonable.[5] The credibility of witnesses and the weight to be given to their testimony are matters within the province of the commissioner as finder of fact. *Briggs* v. *State Employees Retirement Commission,* supra, 210 Conn. 217.

Sergeant Albert Lindblom of the West Haven police department testified that the plaintiff's truck was traveling at an excessive rate of speed to be able to negotiate the turn at the bottom of exit 43.[6] Although there was some seemingly conflicting testimony from Lindblom about what speed would be reasonable under the circumstances,[7] it is up to the trier of fact to weigh conflicting evidence, and there is evidence that rea-

---

[5] General Statutes § 14-218a (a) provides in relevant part that "the State Traffic Commission may determine speed limits which are reasonable and safe on any state highway . . . built or maintained by the state . . . Any speed in excess of such limits . . . shall be prima facie evidence that such speed is not reasonable . . . ."

[6] By measuring skid marks left by the truck at the bottom of the ramp, the police were able to calculate that the truck was traveling at about eleven miles per hour at the time of the skid.

[7] During cross-examination of Lindblom, the following exchange took place:

"[Defense Counsel]: Yes, Sergeant Lindblom, you stated that due to the truck's speed and load that the truck made a clockwise rotation at the intersection and flipped onto its side; however, you also testified this morning that at the time of the skid you were able to mark that the truck was traveling approximately eleven miles per hour. Would you consider

sonably supports the commissioner's conclusion of unreasonable speed.

The commissioner next argues that the trial court improperly determined that the record did not sustain the conclusion that the plaintiff failed to keep her vehicle under control. We conclude that the hearing officer reasonably found that the plaintiff failed to maintain control of her vehicle. The trial court recited in its memorandum of decision that the plaintiff did not stop at the bottom of the ramp "due to the failure of the braking system of the truck." The court went on to say that "[a]n examination of the vehicle by the West Haven police department found the vehicle to be in good mechanical condition 'other than the brakes not holding sufficiently.'"

There was neither allegation nor evidence that the brakes failed between the plaintiff's first uneventful use of exit 43 and the second. Rather, the testimony indicated that the braking system was generally inadequate for the weight and speed of the truck. As the plaintiff's expert testified, the "brake system was too small to be able to bring the truck to a proper stop for the conditions that existed on ramp 43."

The hearing officer found that the plaintiff was unable to "sufficiently slow her vehicle to keep it under

that an excessive rate of speed considering someone is suppose to be making a left turn at the time into the intersection?

"Sergeant Lindblom: Yes, I would. It resulted in a truck flipping. It was too fast for the vehicle.

"[Defense Counsel]: You didn't listen carefully to the question. Assuming the truck was going to make a left turn onto Campbell Avenue, but swerved to the right to attempt to avoid hitting the other vehicle or to avoid the corner—my question is on the left turn on Campbell Avenue of that exit; would that have been an excessive speed under normal circumstances for a truck of that load and size?

"Sergeant Lindblom: I couldn't really say. It's possible that that is a reasonable speed."

control [and] was unable to stop the dump truck by braking and downshifting . . . ." He found further that "[a]n examination of the dump truck by the West Haven police revealed no mechanical defects in the braking system." It was reasonable for the hearing officer to infer from the evidence that the first time the plaintiff used exit 43, she was not traveling too fast for the braking system to control the truck, and the second time she was traveling too fast for the braking system and, consequently, lost control of the truck.

Finally, the commissioner argues that the trial court improperly found that the plaintiff was exempt from the requirements of the exit ramp traffic control signs. The hearing officer found that the plaintiff used exit 43, despite two "No Trucks" signs, and that that contributed to her responsibility for the fatality.

General Statutes § 14-290 (b) exempts maintenance vehicle operators from specified statutes "so far as such exemption is necessary, while such operators and equipment are engaged in or are preparing to engage in or are departing from highway maintenance operations on any highway . . . ." The plaintiff was not required to use exit 43 to reach the landfill, nor did her supervisor order her to use that ramp. In fact, according to police testimony, her use of the ramp displayed poor judgment.

The hearing officer could reasonably have found that it was not necessary for the plaintiff to use exit 43, that she could have used a nonrestricted exit ramp, and, therefore, that she was not exempt from the traffic control signs. Even if the plaintiff were exempt from the truck prohibition, that would not save her. Her use of the restricted ramp was just one of the findings that led the hearing officer to conclude that the plaintiff was responsible for the fatality and thus to suspend the plaintiff's operator's license.

There is evidence that reasonably supports the commissioner's decision. In light of this evidence, the commissioner did not act unreasonably, arbitrarily, illegally or in abuse of his discretion.

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's appeal.

In this opinion the other judges concurred.