STEVEN BANCROFT *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 16554)

Lavery, Spear and Healey, Js.

Argued December 12, 1997—officially released April 14, 1998

*Edward S. Domnarski,* for the appellant (plaintiff).

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

HEALEY, J. On April 7, 1996, the plaintiff, Steven Bancroft, was arrested in Old Saybrook for operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[1] On April 11, 1996, the defendant commissioner of motor vehicles notified the plaintiff of the suspension of his

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

Connecticut motor vehicle operator's license pursuant to General Statutes (Rev. to 1995) § 14-227b (d).[2]

On April 24, 1996, an administrative hearing was held before a hearing officer pursuant to § 14-227b (f).[3] At

[2] General Statutes (Rev. to 1995) § 14-227b (d), as amended by No. 95-279, § 1, of the 1995 Public Acts, provides: "Upon receipt of such report, the commissioner of motor vehicles may suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the department of motor vehicles not later than seven days after the date of mailing of such suspension notice."

[3] General Statutes (Rev. to 1995) § 14-227b (f), as amended by No. 95-279, § 1, of the 1995 Public Acts, provides in relevant part: "If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. At the request of such person or the hearing officer and upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed fifteen days. If a continuance is granted, the commissioner shall extend the validity of the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section for a period not to exceed the period of such continuance. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test

that hearing, there was no testimony, but two exhibits were admitted into evidence. The commissioner submitted the arresting officer's form A-44 report of the arrest and the times and results of the chemical blood alcohol content (BAC) tests administered to the plaintiff. The two breath tests administered by the arresting officer demonstrated a BAC of 0.148 percent on each, which were in excess of the 0.10 percent BAC set out in § 14-227a (a). The plaintiff submitted a letter from James E. O'Brien, a toxicologist, to the plaintiff's attorney.[4] On that date, the hearing officer rendered his decision affirming the one year suspension.

Thereafter, the plaintiff appealed the commissioner's decision of suspension to the Superior Court. The court pointed out that the sole basis of the appeal was that there was insufficient evidence to support the hearing officer's decision that the plaintiff's BAC at the time of operation exceeded the legal level. The plaintiff claimed

results and analysis thereof accurately indicate the blood alcohol content at the time of operation. . . ."

[4] O'Brien's letter stated in relevant part: "I have reviewed the State of Connecticut Department of Motor Vehicles Administrative report and the circumstances surrounding the arrest of Mr. Steven Bancroft on April 7, 1996, for allegedly driving under the influence of alcohol. According to the documents, Mr. Bancroft was stopped at 0150 hours, and Intoxilyzer 5000 tests were performed at 0336 and 0410 hours. The results of these tests were 0.148% on both occasions.

"In regard to your inquiry as to Mr. Bancroft's blood alcohol level at the time of operation, this cannot be established. This is based on the fact that the values obtained on the two tests performed 34 minutes apart are identical. One would expect the alcohol level, because of metabolism, to have decreased 0.010% (average decrease is 0.018%) during this interval. These identical values could only have been obtained if Mr. Bancroft was absorbing alcohol from his stomach at least to a point between the two tests. Since there is no doubt that Mr. Bancroft was absorbing alcohol in the time between tests, there is no question that he was also absorbing alcohol from the time of the stop to the time of the first test. In such situations, there is no extrapolation factor nor any other reliable means to determine Mr. Bancroft's alcohol level at the time of operation. Also, for similar reasons it is impossible to state with reasonable scientific certainty that Mr. Bancroft's alcohol level was at or above 0.1 percent at the time in question (0150 hours)."

that the O'Brien letter legally rebutted the inference permitted by § 14-227b (f), which meant, he argued, that the commissioner was required to provide additional evidence that would extrapolate the test results back to the time of operation. In rejecting the plaintiff's claim, the trial court referred to two recent cases of this court to support its position. Those cases were *State* v. *Nokes*, 42 Conn. App. 10, 678 A.2d 510, remanded for reconsideration, 239 Conn. 926, 683 A.2d 22, on remand, 44 Conn. App. 40, 686 A.2d 999 (1996), and *State* v. *Korhn*, 41 Conn. App. 874, 678 A.2d 492, cert. denied, 239 Conn. 910, 682 A.2d 1010 (1996). The trial court pointed out that both cases involved § 14-227a, which contains provisions that are "essentially identical" to those in § 14-227b, and held in effect that the statute creates only a permissive presumption or inference. The trial court also stated that these decisions established that the jury may draw the inferences, despite expert evidence to the contrary, provided that the jury finds the predicate facts to be true and disbelieves the contrary evidence. The court decided that this analysis also applied to an administrative proceeding under § 14-227b. Accordingly, the trial court reasoned, a hearing officer may rely on the statutory presumption and infer that the plaintiff's BAC had exceeded the legal BAC level at the time of operation, provided that there was substantial evidence to provide the predicate facts.[5] It also meant

---

[5] Section 14-227b provides an exception to the presumption that demonstrates an implicit understanding that in limited circumstances, not present here, the mere presence of a BAC of over 0.10 percent is not sufficient to infer a BAC of over 0.10 percent while operating the motor vehicle. The exception contained in the statute provides: "In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and analysis thereof accurately indicate the blood alcohol content at the time of operation. . . ." General Statutes (Rev. to 1995) § 14-227b (f).

that if there was contrary expert evidence before the hearing officer, the hearing officer was free to believe or disbelieve that evidence. The trial court also decided that no additional expert evidence was required to rebut the plaintiff's expert evidence in such a case. This appeal followed.

On appeal to this court, the plaintiff claims that the trial court improperly (1) held that the presumption created by § 14-227b could withstand "uncontroverted expert testimony that it was not possible with reasonable scientific certainty to determine [the] alcohol level [in the blood] at the time of operation," and (2) dismissed his appeal after the hearing officer arbitrarily and capriciously had ignored the evidence of his expert witness.

The plaintiff correctly acknowledges that under § 14-227b (f), "[i]n the [administrative] hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person . . . at the time of operation. . . ." He points out that in providing that the BAC test results "shall be sufficient," the legislature created a "rebuttable presumption" that the test results can be used in place of direct evidence to prove the BAC at the time of operation and that the presumed fact is that the driver had a BAC equal to or more than 0.10 percent. We agree.

Relying on the letter from his expert, O'Brien, the plaintiff contends that he has rebutted the "rational connection" between the test results and the presumption that his BAC at the time of operation can be determined from them. He depends heavily on O'Brien's letter and argues that it "stated in essence that because of the flat readings . . . 'there is no extrapolation factor nor any other reliable means to determine [the plaintiff's] alcohol level at the time of operation. Also, for similar reasons it is impossible to state with reasonable scientific certainty that [the plaintiff's] alcohol level was

at or above 0.1 percent at the time in question (0150 hours).'" This uncontradicted expert evidence, the plaintiff claims, makes the statutory presumption disappear from the case. It effectively "annuls" the claimed connection between the basic fact, i.e., the test results, and the presumed fact, i.e., that his BAC at the time of operation was 0.10 percent or greater. In effect, the plaintiff argues that his expert evidence in O'Brien's letter rebuts the presumption created by § 14-227b and shifts the burden of proof to the commissioner who, in turn, did not sustain that burden. The plaintiff ultimately claims that because the commissioner did not produce more evidence on the BAC level at the time of operation, the plaintiff must be found to have rebutted the statutory presumption with substantial countervailing evidence and his license should not have been suspended.[6]

The plaintiff's other claim is that suspension of his license was improper because the hearing officer "arbitrarily and capriciously ignored or disregarded the evidence of his expert witness." In advancing this claim, he contends that in a § 14-227b hearing, the hearing officer acts as the fact finder and has a responsibility different from that of a jury in a criminal case. To support this position, he maintains that this distinction is mandated by the relevant departmental regulation, § 14-227b-20 of the Regulations of Connecticut State Agencies.[7] Stressing subsection (b) of that regulation

[6] The plaintiff claims that *State* v. *Nokes*, supra, 42 Conn. App. 10, and *State* v. *Korhn*, supra, 41 Conn. App. 874, are distinguishable because in those cases the defendant did not rebut the presumption with "substantial contrary evidence."

[7] Section 14-227b-20 (a) of the Regulations of Connecticut State Agencies provides: "The hearing officer shall make a determination of the facts at the hearing on the basis of all the relevant evidence presented at the hearing. A separate finding of fact shall be made by the hearing officer for each of the issues.

"(b) The determination of the facts by the hearing officer shall be independent of the determination of the same or similar facts in the adjudication of criminal charges arising out of the person's arrest for the enumerated offense."

as highlighting the different responsibility of the hearing officer from that of a jury, the plaintiff argues that the trial court improperly affirmed the hearing officer's decision where the hearing officer had disregarded the only expert testimony[8] produced at the hearing. The plaintiff argues, quoting *Tanner* v. *Conservation Commission*, 15 Conn. App. 336, 341, 544 A.2d 258 (1988), that while an administrative agency is not required "to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge [on a specific issue]." (Citation omitted.) The plaintiff contends that it was not legal for the hearing officer to rely on his own special or expert knowledge, if he had any, concerning the issue of the BAC level. If the hearing officer intended to do that, then *Feinson* v. *Conservation Commission*, 180 Conn. 421, 428–29, 429 A.2d 910 (1980), required that he so notify the plaintiff in a timely fashion. Because the hearing officer made no reference to the O'Brien letter in his decision, the plaintiff argues that the hearing officer acted in a manner that was "arbitrary, capricious, illegal and an abuse of discretion."

The commissioner counters that in an appeal under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., judicial review is very limited, and the plaintiff has the burden of demonstrating that the hearing officer has acted unreasonably, arbitrarily, illegally or in abuse of his discretion. This review, the commissioner argues, prohibits the reviewing court from retrying the case, reassessing credibility, determining factual issues within the province of the administrative agency or substituting its judgment for that of the agency. In this case, he argues, the decision

---

[8] As already noted, there was no live testimony produced before the hearing officer. Both the plaintiff operator and the defendant commissioner presented only documentary evidence.

of the hearing officer must be affirmed because there is substantial evidence to support his decision. The commissioner also argues that the *Nokes* and *Korhn* decisions cannot be distinguished as the plaintiff claims. In the decisional context, he also argues that *Ramisk* v. *Commissioner of Motor Vehicles*, 45 Conn. App. 924, 696 A.2d 1325, cert. denied, 243 Conn. 923, 701 A.2d 343 (1997), is on "all fours" with this case. With reference to the O'Brien letter, he claims that the hearing officer had the right to believe or disbelieve it, in whole or in part, even though it was the only expert evidence before him.[9] He argues that the hearing officer did not believe the O'Brien letter. The commissioner argues that the statutory presumption that the plaintiff's BAC[10] was in excess of the 0.10 percent level at the time of operation was not rebutted and, therefore, the Superior Court correctly sustained the decision of the hearing officer.

I

"[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [§§ 4-166 through 4-189], and the scope of that review is very restricted." (Internal quotation marks omitted.) *Costello* v. *Kozlowski*, 47 Conn. App. 111, 114, 702 A.2d 1197 (1997); see *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 146, 691 A.2d 586 (1997) (citing General Statutes § 4-183 [j][11] concerning limited review of

---

[9] The commissioner notes that the letter states that O'Brien could not conclude what the plaintiff's BAC was at the time of operation.

[10] There is no question raised concerning either the timing and administration of the two BAC tests or the proper functioning of the equipment when the BAC tests were administered.

[11] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure;

agency decision); *Pickles* v. *Goldberg*, 38 Conn. App. 322, 324–25, 660 A.2d 374 (1995); *Lawrence* v. *Kozlowski*, 171 Conn. 705, 707, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

"The substantial evidence rule governs judicial review of administrative [fact-finding] under General Statutes [§ 4-183 (j)]. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–41, 525 A.2d 940 (1987); *Lawrence* v. *Kozlowski*, [supra, 171 Conn. 713–14]. An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 541, quoting *Lawrence* v. *Kozlowski*, supra, 713. Such a standard of review allows less room for judicial scrutiny than does the weight of the evidence rule or the clearly erroneous rule. *Huck* v. *Inland Wetlands & Watercourses Agency*, supra [541]. In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. Id., 540–42. . . . Basically, an agency is not required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair. *Manor Development Corporation* v. *Conservation Commission*, 180 Conn. 692, 697, 433 A.2d 999 (1980). *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 542." (Internal quotation marks omitted.) *Briggs* v. *State Employees*

(4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

*Retirement Commission*, 210 Conn. 214, 217–18, 554 A.2d 292 (1989); see *Dolgner* v. *Alander*, 237 Conn. 272, 280–82, 676 A.2d 865 (1996); *Ellam* v. *Commissioner of Motor Vehicles*, 47 Conn. App. 509, 512–13, 704 A.2d 257 (1998); *Pickles* v. *Goldberg*, supra, 38 Conn. App. 325.

We are aware that our Supreme Court has said: " '[W]e must decide, *in view of all of the evidence,* whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion.' " (Emphasis in original.) *Stamford* v. *Freedom of Information Commission*, 241 Conn. 310, 314, 696 A.2d 321 (1997); *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 147.

## II

## A

Initially, we cannot accept the plaintiff's claim that his uncontradicted expert evidence shifted the burden of proof to the commissioner to demonstrate by evidence that the plaintiff's BAC at the time of operation was at least 0.10 percent. The plaintiff misconstrues the nature of the statutory rebuttable presumption as set out in § 14-227a (c). A "rebuttable presumption" is defined as a "permissive inference." *State* v. *Korhn*, supra, 41 Conn. App. 880–82. In *Korhn*, we said: "Our Supreme Court has stated that [a] permissive inference suggests to the jury a possible conclusion to be drawn if the state proves predicate facts, but does not require the jury to draw that conclusion. . . . *State* v. *Amarillo*, 198 Conn. 285, 302, 503 A.2d 146 (1986). An entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from the proof by the prosecutor of the basic one and that places no burden of any kind on the defendant . . . [does not violate due process unless]

there is no rational way the trier could make the connection permitted by the inference. *Ulster County Court* v. *Allen*, [442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)] . . . . *State* v. *Truppi*, 182 Conn. 449, 456, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed 2d 329 (1981)." (Internal quotation marks omitted.) *State* v. *Korhn*, supra, 879–80.

As we explained in *Korhn*, "the permissive inference or presumption" as set out in the statute does not shift[12]

---

[12] An instructive and similar case on this matter is *State* v. *Pluta*, 157 Vt. 451, 600 A.2d 291 (1991). Vermont's administrative per se suspension statute contained a presumption that stated, "[I]f there was at any time within two hours of operating, attempting to operate or being in actual physical control of a vehicle an alcohol concentration of 0.10 or more, it shall be a rebuttal presumption that there was 0.10 percent or more by weight of alcohol in the blood at the time of operating, attempting to operate or being in actual physical control." Id., 453. In that case, the defendant was arrested on November 10, 1990, at approximately 1:10 a.m., and a chemical breath test conducted at 2:40 a.m. disclosed that his BAC was 0.15 percent. At the civil license suspension hearing, the defendant introduced an affidavit from a chemist. That chemist testified that "it is possible for a person to have a test result over .10 percent within 2 hours of operation and be under .10 percent at the time of operation." Id., 452. The trial court held that the chemist's affidavit rebutted the statutory presumption that the defendant's BAC was over 0.10 percent at the time of operation. It further held that even with that, the state still could have prevailed had it introduced evidence that related the test back to the time of operation. The state, however, not having done so, failed to show that there was a rational connection between a test result of 0.15 percent BAC one hour and thirty minutes after operation and a BAC of 0.10 percent at the time of operation. The trial court then found for the defendant.

The Vermont Supreme Court reversed on appeal. In doing so it said: "Under Vermont law, a civil presumption effectively places the burden of going forward with the evidence on the party against whom it operates. *Rocque* v. *Co-operative Fire Ins. Assn. of Vermont*, 140 Vt. 321, 325–26, 438 A.2d 383, 386 (1981); V.R.E. 301(a). Thus, the defendant had to present evidence to rebut the presumed fact that his level of intoxication violated the statute. See 9 Wigmore on Evidence § 2494, at 379 (Chadbourn rev. 1981) . . . . To satisfy that burden, defendant was not required to 'overcome' the presumption with evidence. *Tyrrell* v. *Prudential Ins. Co. of America*, 109 Vt. 6, 23–24, 192 A. 184, 192 (1937); *Rocque*, 140 Vt. at 326, 438 A.2d at 386. He was required only to produce evidence sufficient to support a finding that his blood alcohol level was under 0.10 percent at the time of operation.

the burden of proof on the matter of intoxication at the time of operation to the motor vehicle operator, but rather permits the fact finder to conclude that the presumed fact—BAC of at least 0.10 percent at the time of operation—exists if the fact finder finds the basic fact—test readings in excess of those required to trigger the exception under § 14-227a (c). The test readings in this case do not trigger the exception set out in that statute.

## B

The plaintiff also claims that the hearing officer disregarded the O'Brien letter and that "it was not legal for [him] to rely on his own special or expert knowledge, if any, regarding the issue of BAC level." In addition, the plaintiff argues that if the hearing officer "intended to use his special or expert knowledge, he was required to notify the plaintiff of that fact in a timely manner."

To claim, as the plaintiff does, that the hearing officer disregarded the O'Brien letter and, in effect, relied on

See *Fidelity & Deposit Co. of Maryland* v. *Wu*, 150 Vt. 225, 228, 552 A.2d 1196, 1198 (1988) . . . .

"'To rebut a statutory presumption the opponent's evidence must do more than raise a mere theoretical possibility that the presumed fact does not exist. See *Insurance Co. of North America* v. *Millers' Mutual Ins. Assn. of Illinois*, 139 Vt. 255, 258, 427 A.2d 354, 355 (1981) . . . . Otherwise, the use of a presumption to shift the burden of going forward with certain evidence would be meaningless. Since a rebuttable presumption already assumes that the presumed fact will not be true in all cases, it is not rebutted simply by recognizing the possibility that it can be rebutted. To fairly put the presumed fact in issue, specific evidence is required to show that the presumed fact was not true in the particular case, given its actual underlying facts and circumstances.

"In the instant case, defendant's evidence was insufficient to defeat the statutory presumption that a person is intoxicated at the time of operation if his BAC within two hours of operation is .10 percent or more. The trial court erred in concluding that evidence of a general, theoretical nature was sufficient to rebut 23 V.S.A. § 1205(m)'s presumption. . . . Such a holding defeats the obvious purpose of the statute, which is to shift the burden of submitting relation-back evidence to the party most able to provide it." (Citations omitted.) *State* v. *Pluta*, supra, 157 Vt. 453–55.

his "own special or expert knowledge" is to attribute to him a failure to perform his duty. See *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 564, 345 A.2d 520 (1973). The hearing officer[13] who heard the matter and decided to uphold the suspension of the plaintiff's motor vehicle operator's license was a "public officer" and acted in this matter as a statutory designee of the defendant commissioner, having been appointed by him. See General Statutes § 14-4a.[14] As a public officer, the hearing officer is presumed to have acted legally and properly until the contrary appears. *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 6, 513 A.2d 1218 (1986); *Cahill* v. *Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985); *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* supra, 568; *Imbrogno* v. *Stamford Hospital,* 28 Conn. App. 113, 124, 612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992); *Housing Authority* v. *Peraro,* 40 Conn. Sup. 365, 376, 509 A.2d 569 (1985), aff'd, 199 Conn. 566, 509 A.2d 474 (1986). We are entitled to presume that the hearing officer considered *all* the evidence before him in arriving at his decision, which was limited by statute to a determination of four specific issues. See General Statutes § 14-227b (f).

The plaintiff has not shown that the hearing officer "relied on his own special or expert knowledge" for two reasons. First, as noted, the plaintiff has not demonstrated that the hearing officer disregarded the O'Brien

---

[13] Section 14-227b-17 (a) of the Regulations of State Agencies provides in relevant part: "The hearing shall be conducted by a hearing officer appointed by the commissioner pursuant to Section 14-4a of the General Statutes, and shall be limited to a determination of the issues stated in subsection (f) of Section 14-227b of the General Statutes, as amended by Section 1 of P.A. 89-314. . . ."

[14] General Statutes § 14-4a, titled, "Conduct of hearings and rendering of decisions," provides: "In any case where a hearing is required or authorized under the provisions of any statute dealing with the Department of Motor Vehicles such hearing may be conducted by and the decision rendered therein by the commissioner or by any person or persons designated by him."

letter. Second, the plaintiff's reliance on *Feinson* v. *Conservation Commission*, supra, 180 Conn. 429, and *Tanner* v. *Conservation Commission*, supra, 15 Conn. App. 340,[15] is inapposite here. In both of those cases, the appellate courts reversed the decisions of the conservation commissions involved where their decisions were contrary to the unrebutted expert testimony. Since *Feinson* and *Tanner*, however, our appellate courts have handed down decisions that point out that the trier of fact is not required to believe unrebutted expert testimony, but may believe all, part or none of such unrebutted expert evidence.

In *State* v. *Blades*, 225 Conn. 609, 625, 626 A.2d 273 (1993), the defendant, charged with murder, presented the testimony of a board certified psychiatrist in support of his affirmative defense of extreme emotional disturbance. The state did not introduce any expert evidence to refute the defendant's claim as to that defense. The defendant was found guilty of murder. On appeal, the defendant claimed that because the state did not present its own expert evidence to rebut this defense, the trial court[16] was required to accept his evidence and to find that the defendant had sustained his burden of proof on that defense. Id., 627. In rejecting this claim, our Supreme Court said: "Despite the defendant's contention to the contrary, the trial court is not required to accept uncontradicted expert testimony. The court might reject it entirely as not worthy of belief or find that the opinion was based on subordinate facts that were not proven." Id., 629.

In *Pickles* v. *Goldberg*, supra, 38 Conn. App. 325, this court, quoting with approval from *Briggs* v. *State Employees Retirement Commission*, supra, 210 Conn. 217, said: "In determining whether an administrative

---

[15] Neither *Feinson* nor *Tanner* involved the use of a statutory presumption.

[16] The *Blades* trial was conducted before and decided by a three judge court.

finding is supported by substantial evidence, a court must defer to the [commissioner's] . . . right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Internal quotation marks omitted.)

*State* v. *Nokes*, supra, 42 Conn. App. 10, was a case tried to a jury in which the defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor and in which the rebuttable presumption of § 14-227a (c) was involved. In that case, only the defendant offered expert testimony, which the trial court told the jury to consider on the issue of whether it rebutted the statutory presumption that would otherwise exist. The jury chose not to credit that expert testimony and it returned a verdict of guilty. On appeal, drawing on *State* v. *Korhn*, supra, 41 Conn. App. 874, in which the jury instructions were "very similar" to those in *Nokes*, we affirmed.[17] *State* v. *Nokes*, supra, 13.

Quite similar to the case now before us is that of *Ramisk* v. *Commissioner of Motor Vehicles*, supra, 45 Conn. App. 924. In that case, the plaintiff appealed from the defendant commissioner's suspension of his motor vehicle operator's license pursuant to § 14-227b because the plaintiff had failed the chemical test of his BAC. He argued on his appeal that there was insufficient evidence in the record to support the hearing officer's determination that at the time of operation, his BAC exceeded the legal level under the statute. Specifically, the plaintiff argued that the letter of his expert, which was in evidence at the administrative hearing, legally rebutted the presumption created by § 14-227b and

---

[17] Our decision in *State* v. *Nokes*, supra, 42 Conn. App. 10, was remanded by the Supreme Court in *State* v. *Nokes*, 239 Conn. 926, 683 A.2d 22 (1996), and our decision after remand is *State* v. *Nokes*, 44 Conn. App. 40, 686 A.2d 999 (1996). The remand did not involve our implicit holding in our original decision that in that case the trier of fact, in determining whether the rebuttable presumption was rebutted, could choose not to credit, in whole or in part, unrebutted expert testimony.

shifted the burden of proof to the commissioner. That meant, according to the plaintiff, that the commissioner was required to adduce additional evidence that would extrapolate the chemical test results back to the time of operation. The *Ramisk* trial court rejected these claims. In doing so, it cited both *Nokes* and *Korhn* for the proposition that the presumption was "sufficient to withstand expert evidence to the contrary and support a conviction without further evidence, if the jury disbelieves the contrary evidence." *Ramisk* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 96-0558492 (July 11, 1996). The *Ramisk* trial court held that this principle applied equally to an administrative hearing under § 14-227b, saying that "[a] hearing officer may rely on the presumption created by the statute if he or she disbelieves expert evidence to the contrary. Additional expert evidence to rebut the plaintiff's evidence is not required in such a case." Id. We are persuaded, therefore, that in such cases the fact finder is not required to accept such expert evidence to the extent that he or she disbelieves it in whole or in part. The plaintiff has not shown that this hearing officer, acting as a public officer did, in fact, disregard O'Brien's letter as claimed.[18]

"Although proceedings before administrative agencies . . . are informal and are conducted without

---

[18] The plaintiff also appears to claim that in a § 14-227b hearing, the hearing officer acts as a finder of fact and that he has "a different responsibility" from that of a jury in a criminal case. In making this claim in the larger context of how this hearing officer disregarded the only expert testimony produced at the hearing, the plaintiff first states that this distinction is specifically mandated by § 14-227b-20 of the Regulations of Connecticut State Agencies and then states that the "decision responsibility" of the hearing officer is "defined" by § 14-227b-23 of those regulations. The latter, titled, "Form of Decision," provides: "The decision of the hearing officer, if adverse to the person, shall include the findings of fact and conclusions of law necessary to the decision and any appeal thereof."

The plaintiff's claim merits little discussion. We have already concluded

regard to the strict rules of evidence, the hearing must be conducted so as not to violate the fundamental rules of natural justice. *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 207, 355 A.2d 21 (1974). 'Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence.' *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 249, 470 A.2d 1214 (1984)." *Palmisano* v. *Conservation Commission*, 27 Conn. App. 543, 546–47, 608 A.2d 100 (1992). The conduct of the hearing must be fundamentally fair. *Manor Development Corp.* v. *Conservation Commission*, supra, 180 Conn. 697; *Miklus* v. *Zoning Board of Appeals*, 154 Conn. 399, 406, 225 A.2d 637 (1967). The plaintiff concedes that he could have subpoenaed the arresting officer and that he could have had O'Brien testify. He elected not to do so. See *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 509, 671 A.2d 844 (1996). Nothing appears to have made the administrative hearing fundamentally unfair.

We conclude that the administrative record contains substantial evidence supporting the defendant commissioner's suspension of the plaintiff's motor vehicle operator's license. Thus, the trial court was correct in holding that the commissioner's finding was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

The judgment is affirmed.

In this opinion the other judges concurred.

---

that the plaintiff has not shown, as is his burden, that this hearing officer did in fact disregard the O'Brien letter or fail to consider it. In addition, the plaintiff has not shown, as is his burden, that the hearing officer's "determination of the facts . . . [were not in keeping with his duty] independent of the determination of the same or similar facts in the adjudication of *criminal* charges arising out of the person's arrest for the enumerated offense." (Emphasis added.) Regs., Conn. State Agencies § 14-227b-20 (b).