ROBIN CRANDLEMIRE *v.* COMMISSIONER
OF MOTOR VEHICLES
(AC 30088)

Gruendel, Harper and Pellegrino, Js.

---

Argued September 14—officially released November 10, 2009

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*Gregory A. Thompson*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. Pursuant to General Statutes § 4-183, the plaintiff, Robin Crandlemire, commenced an administrative appeal in the Superior Court from the decision of the defendant, the commissioner of motor vehicles,

suspending her motor vehicle operator's license for two years. Following a hearing, the court sustained that appeal. The defendant now challenges the propriety of that determination. We affirm the judgment of the Superior Court.

The facts are not in dispute. At the time of the incident giving rise to the defendant's appeal, the plaintiff had a history of operating motor vehicles under the influence of alcohol. Following her September 10, 2000 arrest for driving under the influence of alcohol with a blood alcohol content at or more than 0.08 in violation of General Statutes § 14-227a, her operator's license was suspended on October 10, 2000, pursuant to General Statutes § 14-227b, and restored on February 7, 2001. The plaintiff then was arrested on March 5, 2004, and again charged with a violation of § 14-227a, this time due to her refusal to submit to a chemical alcohol test. Her operator's license was suspended on April 4, 2004, and restored on December 1, 2005.

On the afternoon of August 31, 2007, the plaintiff was arrested in Newington and charged with, inter alia, operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a.[1] After failing multiple field sobriety tests, the plaintiff was transported to the Newington police department, where two blood alcohol content tests were performed at 4:38 p.m. and 5:15 p.m. Both tests yielded identical blood alcohol content readings of 0.30 and calibration readings of 0.096. The defendant subsequently notified the plaintiff of the suspension of her operator's license for a period of two years and six months due to her failure of "a chemical alcohol test."

At the plaintiff's request, an administrative hearing was held on October 24, 2007. At that hearing, the

---

[1] The plaintiff also was charged with failure to drive in the proper lane in violation of General Statutes § 14-236 and failure to obey a traffic control signal in violation of General Statutes § 14-299.

arresting police officers testified, and copies of the plaintiff's driving history and an A-44 form,[2] which included the blood alcohol content test results, were marked as exhibits. Thereafter, the defendant, through a hearing officer, reached the following findings of fact and conclusions of law: "1. The police officer had probable cause to arrest [the plaintiff] for a violation specified in § 14-227b . . . . 2. The [plaintiff] was placed under arrest. 3. [The plaintiff] was operating the motor vehicle. 4. [The plaintiff] was not under 21 years of age [and] 5. The [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of 0.16 percent or more." The defendant, through the hearing officer, thus concluded that "[a]fter a review of the totality of the evidence, there is ample support in the record to find that probable cause existed for an arrest for § 14-227a" and ordered the suspension of the plaintiff's operator's license for a period of two years and six months.

On November 13, 2007, the plaintiff filed a petition for reconsideration predicated on newly discovered evidence questioning the validity of the test results. In support thereof, the plaintiff attached a letter from Robert H. Powers, a toxicologist and director of the controlled substance toxicology laboratory for the department of public safety. In that November 5, 2007 letter, Powers stated: "[I]n this case, we have a recurrent and identical pattern of calibration check values (0.100, 0.096) *and* identical subject readings. Such an unusual circumstance raises our interest and concern such that we attempted to access the stored instrumental values. In this case, and contrary to routine practice, the test sequence values and associated information were not

---

[2] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

stored in the instrumental memory, and we have therefore, no means of evaluating the overall test process. Because of the unusual test results, and the inability of the laboratory to evaluate the instrumental data, we are unable to offer an opinion as to the validity of this specific test sequence." (Emphasis in original.) The hearing officer granted the petition for reconsideration on January 30, 2008, noting that the "[plaintiff] should be permitted to raise the issue of the chemical test validity at a new hearing. Dr. Powers should be permitted to testify at said hearing."

Accordingly, a second administrative hearing was held on February 27, 2008. At the outset, the hearing officer offered "a little history on the case," reciting its procedural history. After noting that Powers' November 5, 2007 letter "dealt with the validity of the breath test, which . . . became the basis for a petition for reconsideration," the hearing officer cautioned the plaintiff that "that would be the only issue before me today. . . . [W]e can't revisit the issue, in my opinion, of the admissibility of the [chemical alcohol test] readings . . . . But we'll certainly be here to revisit the issue of the validity." During that proceeding, the plaintiff introduced Powers' November 5, 2007 letter as an exhibit. In addition, Powers testified that the identical blood alcohol content readings and calibration checks were "unusual," stating that "the fact that all the numbers are the same in both tests raises my question as to what on Earth is going on here." He later opined that "restricting my comments to an evaluation of this instrumental data alone, I have questions about the validity of this testing process and the information that can be drawn from it," and later concluded that "[v]iewing the Intoxilyzer results by themselves . . . I would not consider them reliable." As Powers succinctly put it, "if [the chemical alcohol test results] must stand alone, they cannot stand."

At the urging of the hearing officer, Powers then reviewed certain documents prepared by the Newington police department that were introduced at the October 24, 2007 hearing.[3] On the basis of that additional information, Powers opined that the plaintiff likely had a blood alcohol level at or above 0.10.[4] Following the conclusion of the hearing, the hearing officer made the following findings of fact and conclusions of law: "1. The police officer had probable cause to arrest [the plaintiff] for a violation specified in § 14-227b . . . . 2. The [plaintiff] was placed under arrest. 3. The [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of 0.08 percent or more [and] 4. [The plaintiff] was operating the motor vehicle." On the basis of the foregoing, the defendant ordered the suspension of the plaintiff's operator's license for a period of two years.

---

[3] At one point in the proceeding, the hearing officer inquired of Powers: "[M]y ultimate finding has to be whether or not I believe that [the plaintiff] was operating at or above either 0.08 or 0.16. In conjunction with what has become [an] exhibit, meaning the [police] report, would that evidence assist you in some way at arriving at an opinion?" At that moment, counsel for the plaintiff objected, stating that he "would object to that because that was not within the context of your motion for reconsideration. And as framed at the beginning of this hearing, it's my understanding [that] the sole issue here is the reliability of the test results."

The hearing officer overruled that objection: "The sole issue is whether or not I can properly make a finding as to whether or not [the plaintiff] was operating with an elevated blood alcohol content, and I believe that the evidence that I rely upon as a hearing officer is the totality of the record, not simply an isolated letter from Dr. Powers or an opinion that is based only on Intoxilyzer printouts. So, if we're going to explore this issue, I need to be able to satisfy myself as a hearing officer that we've explored everything within the purview of this gentleman and his ability to testify as an expert, which may well include looking at this sole piece of paper in front of him and in conjunction with the rest of the evidence in this case. So, with all due respect, I would overrule that objection, and we already have as evidence in the case [the defendant's] exhibit A, which, if we go off the record for a moment, I would like to have the doctor review."

[4] In this appeal, we do not consider the propriety of a toxicologist proffering an expert opinion predicated on police reports, testimony of law enforcement personnel or other evidence extrinsic to the chemical alcohol tests performed.

Pursuant to § 4-183, the plaintiff appealed from that decision to the Superior Court, which conducted a hearing on June 18, 2008. At the outset, the defendant agreed with the court that a § 14-227b administrative hearing is limited to a determination of "not whether the person was intoxicated, but . . . what the results of the [chemical alcohol] test show . . . ." The court questioned whether the hearing officer simply found that "in spite of the testimony of [Powers] . . . these [blood alcohol content] readings are accurate" or whether the hearing officer, in addition to making that finding, considered evidence extrinsic to the results of the blood alcohol tests. The plaintiff argued that such consideration was inappropriate, maintaining that the hearing officer cannot make a determination as to blood alcohol content independent of the test results. Ultimately, the court agreed with the plaintiff, stating that "if [the hearing officer] went and made an independent finding as to the range of the test, of blood alcohol content, he is entirely disregarding the machine results, and I think that's the purpose of the statute. [The hearing officer] is making his own independent judgment based on other evidence, and I don't think that is his statutory function." The court therefore sustained the plaintiff's appeal, and the defendant's appeal to this court followed.

Before considering the defendant's specific claims, we note the standard applicable to our review of administrative decisions. "[J]udicial review of the [defendant's] action is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable.

. . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Winsor* v. *Commissioner of Motor Vehicles*, 101 Conn. App. 674, 679–80, 922 A.2d 330 (2007).

In this appeal, the defendant proffers two differing explanations for the finding by the hearing officer that "the [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of 0.08 percent or more." The defendant first insists, as he did before the Superior Court, that the hearing officer found the chemical alcohol test results reliable despite Powers' testimony to the contrary. In the alternative, the defendant contends that in the event that those test results in fact were deemed unreliable, the hearing officer nevertheless was free to reach a determination independent of that testing as to the plaintiff's blood alcohol content on the basis of extrinsic evidence submitted for consideration.[5] We address each argument in turn.

I

The defendant first argues that, notwithstanding Powers' expert testimony that "if [the chemical alcohol test results] must stand alone, they cannot stand," the hearing officer remained free to "rely on the statutory presumption that the results of the test are sufficient to indicate that the person had [an] elevated blood alcohol content while operating a motor vehicle." The

[5] This appeal is complicated by the fact that although the sole issue at the February 27, 2008 administrative hearing was the validity of the chemical alcohol test results, the hearing officer never made an express finding on that question.

infirmity in that argument is the fact that the hearing officer made no such finding. To the contrary, the precise suspension ordered indicates that the hearing officer implicitly found those test results unreliable.

It is undisputed that the plaintiff twice had her operator's license suspended pursuant to § 14-227b prior to the incident giving rise to the defendant's appeal. The period of suspension for a third offense is circumscribed by state law. General Statutes § 14-227b (i) (3) requires the defendant to suspend the operator's license "if such person has two or more times previously had such person's operator's license . . . suspended under this section, (A) except as provided in subparagraph (B) of this subdivision, two years if such person submitted to a test or analysis and the results of such test or analysis indicated that such person had an elevated blood alcohol content, (B) two and one-half years if such person submitted to a test or analysis and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was sixteen-hundredths of one per cent or more of alcohol, by weight, and (C) three years if such person refused to submit to such test or analysis." As counsel for the defendant conceded at oral argument before this court, if the hearing officer had found the chemical alcohol tests that produced identical 0.30 blood alcohol content readings to be reliable, Connecticut law required the defendant to suspend the plaintiff's operator's license for a period of two years and six months. The February 27, 2008 decision, however, ordered her license suspended for a period of two years.[6] Given the clear mandate of § 14-227b (i) (3), with which we presume that

---

[6] The defendant appears to overlook this critical distinction, as his appellate brief concludes by asking this court to "reverse the decision of the [Superior Court] and dismiss the plaintiff's administrative appeal of the [department's] suspension of her operator's license *for two years and six months*." (Emphasis added.)

the hearing officer complied,[7] that term of suspension cannot be reconciled with the defendant's claim that the hearing officer implicitly found the chemical alcohol tests that produced identical 0.30 blood alcohol content readings to be reliable. Given that patent inconsistency between the chemical alcohol test readings and the suspension ordered, we can only conclude that the hearing officer concurred with the expert opinion of Powers that "[v]iewing the [chemical alcohol test] results by themselves . . . I would not consider them reliable." We thus reject the defendant's claim that the hearing officer found the test readings to be "accurate" in the present case.

## II

The question that necessarily follows, then, is, on what did the hearing officer base his finding that "the [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of 0.08 percent or more" if he found that test unreliable? This query brings us to the defendant's alternative argument that the hearing officer is free to reach such a determination independent of the chemical alcohol testing on the basis of extrinsic evidence presented at the administrative hearing. The defendant has provided this court with no authority for that novel proposition.

Pursuant to § 14-227b (g), the administrative hearing "shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3)

---

[7] As this court has observed, "the hearing officer is presumed to have acted legally and properly until the contrary appears." *Bancroft* v. *Commissioner of Motor Vehicles,* 48 Conn. App. 391, 404, 710 A.2d 807, cert. denied, 245 Conn. 917, 717 A.2d 234 (1998). The defendant has not argued, before the Superior Court or in this appeal, that the hearing officer misapplied § 14-227b (i) (3).

did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ." Only the third criterion is at issue in the present case. Because the plaintiff submitted to "a chemical analysis of such person's blood, breath or urine"; General Statutes § 14-227b (a); the proper focus of our analysis is on whether the hearing officer properly found that the results of the chemical alcohol tests indicated that she had an elevated blood alcohol content.

In making that determination, the hearing officer may consider other evidence presented at the hearing. Section 14-227b-17 (b) of the Regulations of Connecticut State Agencies provides that "[t]he findings required to be made at the hearing in accordance with subsection (g) or (j) of section 14-227b of the Connecticut General Statutes shall be based on substantial evidence when the record is considered as a whole." The defendant relies on the seminal case of *Bancroft* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 391, 710 A.2d 807, cert. denied, 245 Conn. 917, 717 A.2d 234 (1998), and its progeny to support his contention that a hearing officer is free to reach an independent determination as to the plaintiff's blood alcohol content on the basis of evidence other than chemical alcohol test results presented at the administrative hearing. For two reasons, that reliance is misplaced.

First and foremost, *Bancroft* does not support that proposition. In that case, this court held that the hearing officer in an administrative hearing conducted pursuant to § 14-227b was not required to accept the testimony of the plaintiff's expert and properly relied on the statutory presumption that the results of a chemical alcohol test or analysis are sufficient to indicate a person's blood

alcohol content at the time of the operation of a motor vehicle. Id., 402–407. Significantly, the court in *Bancroft* concluded that the hearing officer had applied the "statutory rebuttable presumption"; id., 402; which permits a hearing officer to presume that "the results of the [chemical alcohol] test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person . . . at the time of operation."[8] (Internal quotation marks omitted.) Id., 396; see General Statutes § 14-227b (g); see also General Statutes § 14-227a (b). Subsequent appellate decisions likewise have concluded that the hearing officer was free to rely on the statutory rebuttable presumption in the face of conflicting expert testimony. See *Simard* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 690, 695, 772 A.2d 1137 (2001); *Dumont* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 635, 641, 712 A.2d 427, cert. denied, 245 Conn. 917, 717 A.2d 234 (1998); *Settani* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 418, 421, 710 A.2d 816, cert. denied, 245 Conn. 916, 719 A.2d 1166, 1167 (1998). Although this court on occasion has noted certain other evidence presented at the administrative hearing that indicated intoxication; see *Alvord* v. *Commissioner of Motor Vehicles*, 84 Conn. App. 302, 306–307, 853 A.2d 548 (2001); *Simard* v. *Commissioner of Motor Vehicles*, supra, 695–96; it always has been in tandem with the application of the statutory rebuttable presumption regarding the chemical alcohol tests performed. In neither *Bancroft* nor its progeny has this court or our Supreme Court concluded that a hearing officer may find, pursuant to the third criterion of § 14-227b (g), that a person submitted to a chemical alcohol test "and the results of such test or analysis indicated that such

---

[8] The fact that the hearing officer ordered the plaintiff's operator's license suspended for a period of two years, rather than two and one-half years, in the face of identical 0.30 blood alcohol content readings; see part I; indicates that the statutory rebuttable presumption was not applied in the present case.

person had an elevated blood alcohol content" *solely* on the basis of evidence extrinsic to said test results that was introduced at the hearing.

Second, our Supreme Court has held repeatedly that "the plain language of [§ 14-227b (g)] expressly and narrowly limits the scope of the license suspension hearing to the four issues enumerated in the statute." *Fishbein* v. *Kozlowski*, 252 Conn. 38, 46, 743 A.2d 1110 (1999). The third criterion of § 14-227b (g) by its plain language does not ask whether the plaintiff operated her motor vehicle with an elevated blood alcohol content, but rather requires a more specific determination, namely, whether the chemical alcohol test administered revealed an elevated blood alcohol content. Thus, although the hearing officer may consider the evidence of the record as a whole; Regs., Conn. State Agencies § 14-227b-17 (b); that evidence must demonstrate that the chemical alcohol test revealed an elevated blood alcohol content. See *Dumont* v. *Commissioner of Motor Vehicles*, supra, 48 Conn. App. 644 (noting that such additional evidence must demonstrate "that the results accurately indicate the blood alcohol content"). Given our conclusion in part I that the precise suspension ordered strongly indicates that the hearing officer did not find the test results to be accurate, it cannot be said that the other evidence submitted at the hearing demonstrated the reliability of those test results.

As we have noted, the defendant has not provided any authority for the proposition that a hearing officer, after concluding that the chemical alcohol test results are unreliable, may reach an independent determination on the basis of other evidence presented as to whether a person operated a motor vehicle with an elevated blood alcohol level. Such a determination is outside the narrow scope of the license suspension hearing. See *Bancroft* v. *Commissioner of Motor Vehicles*, supra, 48 Conn. App. 404 (decision of hearing officer "limited by

statute to a determination of four specific issues"). To the extent that the defendant wants us to rewrite the parameters of administrative hearings conducted pursuant to § 14-227b, we decline to do so, as that remains properly the province of our General Assembly.

The narrow question presented in the present case was whether the results of the chemical alcohol tests submitted to by the plaintiff on August 31, 2007, "indicated that such person had an elevated blood alcohol content . . . ." General Statutes § 14-227b (g). In suspending the plaintiff's operator's license for a period of two years despite identical blood alcohol content readings of 0.30, the hearing officer answered that question in the negative. We therefore conclude that the Superior Court properly sustained the appeal in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.