# ROLAND DUMONT *v.* COMMISSIONER OF MOTOR VEHICLES
## (AC 16761)

Foti, Hennessy and Stoughton, Js.

Argued February 19—officially released May 12, 1998

*Jeffrey D. Brownstein*, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (plaintiff).

*Alan N. Ponanski*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

STOUGHTON, J. This is an appeal from the judgment dismissing the appeal by the plaintiff, Roland Dumont, from the decision of the commissioner of motor vehicles suspending Dumont's license to operate a motor vehicle. Dumont claims that (1) there was no probable cause for his arrest, (2) the commissioner's decision was not supported by substantial evidence, and his expert evidence rebutted the statutory presumption, (3) General Statutes §§ 14-227a (a)[1] and 14-227b[2] are

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor . . . or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[2] General Statutes (Rev. to 1995) § 14-227b, as amended by Public Acts 1995, No. 95-279, § 1, provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor . . . or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the

unconstitutional in various respects, (4) his rights were substantially prejudiced because the hearing officer acted as judge and state advocate and (5) his due process rights were violated by the denial of his request for a continuance.

The hearing officer reasonably could have found the following facts. On April 11, 1996, a state trooper on Interstate 84 observed Dumont's car swerve from the left exit lane back onto the highway, causing other vehicles to brake quickly. The trooper stopped Dumont for operating his vehicle erratically and found that Dumont's breath had an odor of alcohol. Dumont said that he had been drinking beer. When Dumont got out of his car, he steadied himself on the car and walked with a limp. He told the trooper that he had injured his left ankle and right heel the previous year, and the

option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license . . . may be suspended in accordance with the provisions of this section if . . . he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight . . . .

"(f) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. . . . The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor . . . or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person . . . submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and analysis thereof accurately indicate the blood alcohol content at the time of operation. . . ."

trooper, therefore, did not ask Dumont to perform *all* of the standard field sobriety tests. In the opinion of the trooper, Dumont failed the tests that were administered. On the basis of the test results and his other observations, the trooper arrested Dumont for operating a motor vehicle while under the influence of intoxicating liquor and took him to the Southington police station. After advising Dumont of his rights, the trooper administered two breath tests using an Intoxilyzer 5000 machine. The results of the tests showed blood alcohol levels of 0.132 percent and 0.118 percent. Thereafter, the commissioner notified Dumont that his operator's license was to be suspended for a period of ninety days.

Pursuant to § 14-227b, Dumont requested a hearing on the suspension of his license. His counsel issued a subpoena ordering the trooper to appear at the hearing with the machine and a number of documents. The trooper appeared and testified, but brought only a log book with him. He testified that the machine was functioning properly at the time of the tests and that it was certified by the state department of public health and addiction services (health department). He testified further, however, that the machine and the other items requested were not within the custody or control of the state police, but were the property of and in the custody of either the Southington police department, the health department or some other agency. Dumont requested a continuance to obtain the evidence sought. The hearing officer denied the request.

At the hearing, Dumont submitted a report signed by a toxicologist, Brian Pape,[3] in which Pape expressed the opinion that the machine used to measure the alcohol content of Dumont's blood was not reliable. Pape concluded that there was a reasonable likelihood that

---

[3] Pape did not testify at the hearing.

Dumont's true blood alcohol content was less than 0.10 percent at the time of his breath tests.

The hearing officer concluded that the police had probable cause to arrest Dumont, that they did arrest him for operating a motor vehicle while under the influence of intoxicating liquor, that he had been operating a motor vehicle and that within two hours after operating the vehicle, he had submitted to a breath test that showed the alcohol content of his blood to be above the legal limit. On the basis of those findings, the hearing officer suspended Dumont's license. Dumont appealed to the Superior Court, which upheld the license suspension. We affirm the decision of the Superior Court.

I

Dumont claims first that because the trooper failed to administer two particular field sobriety tests, and because two of the tests administered were nonstandard, there was not probable cause for an arrest.[4]

"It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion. . . ."

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . In determining whether there was probable cause to arrest for operating a motor vehicle while under the

[4] This claim challenges the hearing officer's determination of the first of the four hearing issues set forth in § 14-227b: "Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor . . . or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor . . . ."

influence of liquor, the court may consider, just as in an arrest for any other criminal offense, circumstantial as well as direct evidence. . . .

"To establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and this court cannot disturb the conclusions reached by the commissioner if there is evidence that reasonably supports his decision." (Citations omitted; internal quotation marks omitted.) *Kirei* v. *Hadley*, 47 Conn. App. 451, 456–57, 705 A.2d 205 (1998).

As in *Kirei*, the record here shows that the testimony of the trooper, the trooper's report that was admitted into evidence and the totality of the circumstances at the time of Dumont's arrest support the hearing officer's finding that there was probable cause to arrest Dumont for operating a motor vehicle while under the influence of liquor. See id., 457.

The trial court properly found that there was ample evidence to support the hearing officer's determination that there was probable cause to arrest Dumont.

## II

Dumont next claims (1) that the hearing officer's finding that Dumont was operating a motor vehicle while under the influence of intoxicating liquor was not supported by substantial evidence because the breath test machine was not functioning properly, (2) that the hearing officer improperly disregarded Pape's report, which was the only expert evidence offered, and (3) that Pape's report rebutted the statutory presumption that the results of the tests indicated Dumont's blood alcohol content at the time of operation.

Given the trooper's testimony and the certification of the machine by the health department, the court had ample evidence to conclude that the machine was functioning properly.

Our recent decision in *Bancroft* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 391, 710 A.2d 807 (1998), directly addresses Dumont's arguments regarding his expert evidence. The hearing officer "is not required to believe unrebutted expert testimony, but may believe all, part or none of such unrebutted expert evidence." Id., 405. Moreover, Dumont has not demonstrated that the hearing officer disregarded Pape's report. As to the argument that Pape's report rebutted the statutory presumption, we stated in *Bancroft* that the statutory presumption is "sufficient to withstand expert evidence to the contrary and support a conviction without further evidence, if the jury disbelieves the contrary evidence. . . . [T]his principle applie[s] equally to an administrative hearing under § 14-227b, [where a] hearing officer may rely on the presumption created by the statute if he or she disbelieves expert evidence to the contrary. Additional expert evidence to rebut the plaintiff's evidence is not required in such a case." (Citation omitted; internal quotation marks omitted.) Id., 407.

We affirm the trial court's finding that the hearing officer's reliance on the statutory presumption to suspend Dumont's license was proper.

### III

### A

Dumont maintains that §§ 14-227a (a) and 14-227b are void for vagueness because he had no way of measuring whether his blood alcohol content was 0.10 percent or higher when he operated his motor vehicle. "The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central

precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . .

"Furthermore, [a]s a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997).

Dumont claims that the statutes do not give fair warning because an ordinary person has no ascertainable means of measuring his or her own blood alcohol content. This claim has been rejected in all of our sister states in which it has been raised.[5] We join those states on the basis of the reasoning stated by the California Supreme Court in *Burg* v. *Municipal Court for Santa Clara County Judicial District*, 35 Cal. 3d 257, 271–72, 673 P.2d 732, 198 Cal. Rptr. 145 (1983), cert. denied and appeal dismissed, 466 U.S. 967, 104 S. Ct. 2337, 80 L. Ed. 2d 812 (1984): "[I]t requires more than a small amount of alcohol to produce a [0].10 [percent] BAC [blood alcohol content]. Those who drink a substantial amount of alcohol within a relatively short period of time are given clear warning that to avoid possible criminal behavior they must refrain from driving. . . . Considering also today's heightened level of public awareness regarding the problem, we cannot believe that any person who

---

[5] See, e.g., *Roberts* v. *State*, 329 So. 2d 296 (Fla. 1976); *State* v. *Bock*, 357 N.W.2d 29 (Iowa 1984); *People* v. *Schmidt*, 124 Misc. 2d 102, 478 N.Y.S.2d 482 (N.Y. City Crim. Ct. 1984); *State* v. *Tanner*, 15 Ohio St. 3d 1, 472 N.E.2d 689 (1984); *Commonwealth* v. *Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983); *Greaves* v. *State*, 528 P.2d 805 (Utah 1974); *State* v. *Franco*, 96 Wash. 2d 816, 639 P.2d 1320 (1982).

drives after drinking would be unaware of the possibility that his blood-alcohol level might equal or exceed the statutory standard. . . . Charts are readily available to the public that show with reasonable certainty the number of different alcoholic beverages necessary for a particular individual to reach a blood-alcohol level of 0.10 percent." (Citations omitted; internal quotation marks omitted.)

We conclude that §§ 14-227a (a) and 14-227b are not unconstitutionally vague as applied to Dumont.

## B

Dumont also maintains that § 14-227b (f) is unconstitutional because it is limited to four issues and, thus, denies him due process. He cites no authority in support of this claim and offers no analysis beyond his argument that he was thus prevented from explaining that his performance and test results were not related to his being under the influence of alcohol. "One who challenges the constitutionality of a statute bears the heavy burden of overcoming the presumption of its constitutional validity and of establishing the statute's invalidity beyond a reasonable doubt." *Ecker* v. *West Hartford*, 205 Conn. 219, 237, 530 A.2d 1056 (1987). Dumont has failed even to come close to satisfying this heavy burden.

## C

Dumont also claims that § 14-227b is unconstitutional because it mandates that the hearing officer find that the blood alcohol content was 0.10 percent or higher if the test, commenced within two hours of the time of operation, indicates the same. He argues that under the terms of § 14-227b (f) the result of the test is sufficient to indicate the content of alcohol in the blood at the time of operation, and that this amounts to a conclusive and unconstitutional presumption. We consider and

reject the claim as being without merit. One of the four issues to be determined by the hearing officer is whether the operator submitted to a test commenced within two hours of the time of operation and, if so, whether the result of the test indicated a blood alcohol content of 0.10 percent or higher. Pursuant to § 14-227b (f), the test result is sufficient only to indicate blood alcohol content at the time of operation if the result of the second required test is not 0.12 percent or less and is higher than the result of the first test. If such results do occur, there must be additional evidence demonstrating that the results accurately indicate the blood alcohol content at the time of operation. Thus, the statute creates a rebuttable, as opposed to a conclusive, presumption. See *State* v. *Korhn*, 41 Conn. App. 874, 880–81, 678 A.2d 492, cert. denied, 239 Conn. 910, 682 A.2d 1010 (1996).

## IV

Dumont claims that the dual role of the hearing officer as judge and state advocate substantially prejudiced his rights. He claims that the hearing officer presented the evidence, ruled on its admissibility and rendered a decision, thus substantially prejudicing his rights. Dumont cites no authority in support of this claim. The hearing officer received the reports from the police officer and the evidence Dumont adduced. There is no reference in the brief to any specific ruling on admissibility that called into question the hearing officer's impartiality. The hearing officer was called upon merely to decide four statutory issues, and he did so. "It is not violative of due process for the same authority which initiated the subject of the hearing to listen to and determine its outcome as long as that authority gives the person appearing before it a fair, open and impartial hearing." (Internal quotation marks omitted.) *New England Rehabilitation Hospital of Hartford, Inc.* v.

*Commission on Hospitals & Health Care,* 226 Conn. 105, 151, 627 A.2d 1257 (1993).

Dumont also claims that the fact that the hearing officer is compensated by the department that seeks to suspend his license presents too high a risk that he will be biased. Dumont does not assert that the hearing officer was in fact biased, and this claim too lacks merit.

V

Finally, Dumont claims that his due process rights were violated when the hearing officer denied his request for a continuance to permit him properly to subpoena the persons or agencies having custody of the Intoxilyzer 5000 and various documents. The trial court, in its discretion, reasonably found that Dumont and his counsel knew that the breath tests were given at the Southington police department with that department's machine. Also, there is nothing in the record to indicate that a subpoena could not have been issued to the more likely repositories of the documents sought.

The judgment is affirmed.

In this opinion the other judges concurred.