[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF THE CASE
The plaintiff, Russell Leake, appeals from the decision of the defendant, the commissioner of consumer protection ("the Commissioner"), finding that the plaintiff engaged in violations of the Home Improvement Act, General Statutes § 20-426 et seq. The defendant acted pursuant to § 20-418 et seq. of the General Statutes and in accordance with the Uniform Administrative Procedure Act; General Statutes § 4-166, et seq. The plaintiff appeals pursuant to §§ 20-431 and 4-183 of the General Statutes.
 II. PROCEDURAL HISTORY
On December 31, 1997, the Commissioner adopted the proposed final decision of the hearing officer. On February 13, 1998, the CT Page 3548 plaintiff filed an appeal from the decision of the Commissioner.
The Commissioner filed an answer and a return of record on May 21, 1998. The plaintiff filed a brief in support of the appeal on July 31, 1998, and the defendant's brief was filed on August 27, 1998. The hearing, scheduled for January 5, 1999, was waived by the parties. The matter was taken on the papers by the court, Sylvester, J.
 III. FACTS
The plaintiff, doing business as Leake Builders, engaged in the home improvement business at 25 O'Neill Road, Oxford, Connecticut. On March 24, 1997, the Commissioner filed a revised complaint against the plaintiff. The three count complaint alleged that the plaintiff engaged in conduct that was violative of the Home Improvement Act, General Statutes § 20-418 et seq. and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (Return of Record [ROR], #1.) According to the complaint, the plaintiff violated provisions of both statutes in two separate incidents: the first pertaining to work contracted with the plaintiff by the Smiths in Stamford, and the second pertaining to work contracted with the plaintiff by the Moores in Greenwich.
On May 15, 1997, a formal administrative hearing, at which the plaintiff appeared pro se, was held in Hartford, Connecticut, before the office of the commissioner of consumer protection, hearing officer Thomas Cerasulo presiding. On October 3, 1997, Cerasulo issued a proposed final decision. In this proposed decision, Cerasulo concluded that the plaintiff violated the Home Improvement Act, General Statutes § 20-426 et seq. "by failing to complete contracted work, and failing to provide contracts in compliance with the law." (ROR, #4.)
Based on this conclusion, the hearing officer proposed that 1) the plaintiff post a bond in the amount of ten thousand dollars in order to obtain and/or renew a home improvement contractor certificate of registration; 2) that the plaintiff immediately cease and desist from engaging in conduct violative of the Home Improvement Act and; 3) that the plaintiff make restitution in the amount of $22,882.59 to Lester Uris Smith and $18,687.05 to Charles Irene Moore. (ROR, #4.) On December 31, 1997, the Commissioner adopted the proposed final decision in full. (ROR, #5.) CT Page 3549
In his appeal dated February 13, 1998, the plaintiff alleges that "[t]he Commissioner of Consumer Protection erred in adopting the Proposed Final Decision of the hearing officer in that false material was presented at the hearing, the appellant was unrepresented at the hearing, the decision was based on erroneous information and the decision is not supported by the evidence." (Plaintiff's Appeal, February 13, 1998.)
 IV. JURISDICTION A. Aggrievement
Section 4-183 (a) of the Uniform Administrative Procedures Act states that "a person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court. . . ."
"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must . . . demonstrate a specific personal and legal interest in the subject matter of the decision. . . . Second, the party . . . must . . . establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) United Cable Television Services Corp. v. Dept. ofPublic Utility Control, 235 Conn. 334, 342-43, 663 A.2d 1011
(1995).
Here, the plaintiff has been ordered by the defendant to post a bond to secure a license and also been ordered by the defendant to pay restitution to two separate parties. The plaintiff's legally protected interests have been adversely affected and, therefore, the plaintiff is aggrieved.
 B. Timeliness/Service
Pursuant to General Statutes § 4-183 (c), the appeal must be served within forty-five days after notice of the decision is either sent or personally delivered to the aggrieved party. The commissioner rendered his decision on January 31, 1997. Even though the record does not demonstrate how the plaintiff received CT Page 3550 notice of the decision, an appeal was filed on February 13, 1998.
The record is also silent as to how service was made on the defendant. Since the defendant has neither raised the issue of service at any time, nor acted in a manner inconsistent with actual service or notice,[1] the court will assume that the defendant was served. Since the file lacks a sheriff's return, the court will again assume that service was made on the defendant by United States mail as contemplated by General Statutes § 4-183 (c).
The plaintiff, however, has failed to file an affidavit attesting how service was made as required by General Statutes §4-183 (d). The failure to provide an affidavit attesting to service, however, does not deprive the court of subject matter jurisdiction over the case. George v. A.D.P. Corp. , Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 051590, (January 19, 1996, Skolnick, J.). Rather, failure to file proof of service is a defect in process that is cause for dismissal only if the defendant has been prejudiced. See Fuentesv. Connecticut Medical Examining Board, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 552780 (October 23, 1995, Maloney, J.); see also § 4-183 (d).
As stated above, the defendant has acted in a manner consistent with service and notice and does not argue that it has not been properly served. The court, therefore, finds that the defendant has not been prejudiced by the plaintiff's failure to include an affidavit of service. The appeal was filed within forty-five days of the decision and is timely in that regards.
 V. SCOPE OF JUDICIAL REVIEW
The review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . " This limited standard of review dictates that, "[w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to CT Page 3551 substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) Connecticut Light Power Co.v. Dept. of Public Utility Control, 219 Conn. 51, 57,591 A.2d 1231 (1991).
An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 744, 626 A.2d 705 (1993). Substantial evidence exists if "the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.)Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580,601, 590 A.2d 447 (1991). This "substantial evidence" standard is highly deferential and permits less judicial scrutiny than a "clearly erroneous" or "weight of the evidence" standard of review. Connecticut Light Power Co. v. Dept. of Public UtilityControl, 216 Conn. 627, 640, 583 A.2d 906 (1990). The burden is on the plaintiff to demonstrate that the agency's factual conclusions are not supported by the weight of substantial evidence on the whole record. New England Cable TV Association.Inc. v. Department of Public Utility Control, 247 Conn. 95, 118,717 A.2d 1276 (1998).
 VI. DISCUSSION
The plaintiff claims that the defendant erred in adopting the proposed final decision of the hearing officer in that 1) false material was presented at the hearing; 2) the appellant was unrepresented at the hearing; 3) the decision was based on erroneous information and; 4) the decision is not supported by the evidence. In his memorandum of law in support of his appeal, the plaintiff has only addressed the issue that the decision is not supported by the evidence. The court, accordingly, will only address that issue as the plaintiff's other issues are considered abandoned. Willows Spring Condominium Association, Inc. v. 7thBRT Development Corp. , 245 Conn. 1, 38, 717 A.2d 77 (1998).
The commissioners adoption of the proposed final decision included the hearing officer's conclusions of law that the plaintiff violated the Home Improvement Act by failing to complete contracted work and failing to provide contracts in compliance with the law. (ROR, #5.) The plaintiff claims that the substantial evidence in the record was insufficient to support this decision and the defendant's subsequent order that the CT Page 3552 plaintiff pay restitution on both the Smith and the Moore contracts.
 A. Providing Contracts in Compliance with the Law
General Statutes § 20-429 (a), in pertinent part, states: "No home improvement contract shall be valid or enforceable against any owner unless it (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owners cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of the contract shall be in writing and shall be signed by the owner and contractor . . . ."
Section 20-429 (c) states that: "The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed."
In the proposed final decision that was adopted by the commissioner, the hearing officer found that "[t]he contracts fail to comply with the requirements of the Home Improvement Act insofar as said contracts did not contain the mandatory three day right of cancellation, the start and completion date, signature and date by both the [contractor] and consumer." (ROR, #4.) The hearing officer also found that the contract between the plaintiff and his consumers failed to detail the scope of work to be performed by the contractor. (ROR, #4.)
A review of the record indicates that substantial evidence exists to support these findings of fact by the defendant.
The record contains the results of an investigative report conducted by the State of Connecticut department of consumer protection in regard to the plaintiff's contract with the Smiths. In the course of its investigation, the department of consumer protection investigator, Robin Cox, concluded that the contract between the plaintiff and the Smiths violated § 20-429 in several ways. (ROR, #3, Exhibit [Ex.] 3.) Robin Cox also testified as to these inadequacies[2] during the formal hearing. (ROR, #2, pp. 4-18.) Also, the Smiths testified that, though they signed the contracts, they never received a signed copy as required by law. CT Page 3553 (ROR, #2, p. 46.) The record also contains a copy of the contract itself. (ROR, #3, Ex. 5.)
The record reveals similar evidence in regard to the contract between the plaintiff and the Moores. An investigative report conducted by Barbara Syp of the department of consumer protection, for instance, concludes that the plaintiff failed to include starting or ending dates in the contract. (ROR, #3, Ex. 3A). Robin Cox, of the frauds division of consumer protection, testified as to numerous deficiencies in the contract. (ROR, #2, pp. 90-93.) Finally, a review of the contract reveals that the rider attached to the original contract was not signed by all the parties, fails to state a start and completion date, and does not contain a notice of cancellation. (ROR, #3, Ex. 4A.)
The record does contain substantial evidence to support the findings of fact of the defendant in concluding that the plaintiff failed to provide contracts in compliance with the Home Improvement Act.
 B. Failure to Complete Contracted Work
The commissioner also concluded that the plaintiff had violated General Statutes § 20-426 et seq. by failing to complete the work contracted for. Keeping in mind the deferential standard the court must employ when reviewing the agency's findings of fact, a review of the record indicates that there is substantial evidence in the record to support this conclusion.
In regards to the plaintiff's contract with the Smiths, the record is somewhat unclear as to the scope of work to be performed by the plaintiff. The Smiths testified that they hired the plaintiff to transform a two family home into a four family home. (ROR, #2, pp. 45, 66.) Apparently, when the Smiths were notified by the plaintiff that this was not possible, the Smiths agreed that the plaintiff would transform the attic into a third floor apartment. (ROR, #2, pp. 45, 66.) The plaintiff, on the other hand, testified that the third floor was not meant to be a separate apartment, but merely an addition to the second floor.[3] (ROR #2, pp. 84-85.)
Regardless of the total amount of work that was to be performed, the record indicates that at a certain point during the plaintiff's ongoing work, the City of Stamford issued a "Stop Work Order" as a result of numerous code violations found by the CT Page 3554 Building Inspector to exist at the premises. (ROR, #3, Ex. 8.) When the attempts to have the plaintiff remedy these violations failed, the Smiths terminated the contract of the plaintiff and hired other contractors to remedy the problems contributing to the "Stop Work Order." (ROR, #3, Ex. 11.)
Concerning the Moores' contract with the plaintiff, Charles Moore testified that at a certain point in time, with numerous items in need of completion, the plaintiff stopped coming to the Moore residence altogether. (ROR, #2, pp. 96-98.) When the Moores attempted to contact the plaintiff, the plaintiff never returned his calls. (ROR, #2, p. 96.) As a result, the Moores eventually hired new contractors to complete the remaining work. (ROR, #2, pp. 102-103.)
In his memorandum in support of the appeal, the plaintiff argues that he did not fail to complete either of the projects of his own volition. Rather, the plaintiff argues that a period of hospitalization, lack of final payments, and an order to stop prohibited him from completing any work.
Concerning the Smiths' contract, the plaintiff testified that he was unable to respond to the concerns raised by the Stamford building inspector due to the fact that he was hospitalized for three weeks with back surgery. (ROR, #2, p. 30.) The plaintiff further testified that when he finally did try to straighten the matter out, he discovered that he had already been discharged by the Smiths. (ROR, #2, p. 30.) As to the Moores project, the plaintiff testified that he did not finish because the Moores' failure to pay amounts due made it impossible for the plaintiff to continue carrying the site without further eroding any profit margin. (ROR, #2 pp. 110-11, 127.)
The court does not review the record de novo. Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 541, 525 A.2d 940
(1987). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted.) Forsell v. ConservationCommission, 43 Conn. App. 239, 243, 682 A.2d 595 (1996). "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency and this court cannot disturb the conclusions reached by the commissioner if there is evidence that reasonably supports his decision. . . ." (Citations omitted.) Dumont v. Commissioner ofCT Page 3555Motor Vehicles, 48 Conn. App. 635, 640, 712 A.2d 427 (1998).
A review of the record reveals that the commissioner could have drawn the conclusion that the plaintiff was responsible for failing to complete both the Smith and the Moore contracts. Pertaining to the Smith contract, the record indicates that on March 28, 1995 a rider signed by the plaintiff and Lester Smith indicated that the project would be completed in its entirety on May 15, 1995. (ROR, #3, Ex. 7; ROR, #2, p. 70.) When the plaintiff was discharged by the Smiths on September 13, 1995, the project still was incomplete and contained numerous building code violations. The record also shows that though the plaintiff may have been hospitalized for a period of time, communications between the Smiths and Stamford building officials and the plaintiff seemed to indicate that the plaintiff was unwilling to finish the project. (ROR #2, pp. 57-58.) The plaintiff failed to respond to most inquiries and seemed unconcerned about the situation on the occasions he did respond. (ROR #2, pp. 57-58; ROR #3, Ex. 10.)
Based on the record before the court, the Commissioner may also have found that the plaintiff failed to complete the Moore contract. By his own admission, the plaintiff indicated that nearly 10% of the Moore project was not completed. (ROR, #2, pp. 118, 122.) The owner Charles Moore testified as to the various items left unfinished. (ROR, #3, Ex. 7A; ROR, #2, pp. 99-101.)
Though the plaintiff indicated that he stopped work on the Moore contract because the Moores failed to timely pay the plaintiff, the record also indicates that the Moores' payments to the plaintiff were contingent upon inspection and approval from Moores' bank, which was to pay funds directly to the plaintiff (ROR, #2, p. 114.) According to Charles Moore, the plaintiff was aware of this arrangement and yet failed to pursue any of the required inspections. (ROR, #2, p. 127.) Furthermore, the record shows that the plaintiff apparently did not notify the Moores of his decision to stop work, but rather simply failed to show up at the job and refused to answer any of the times the Moores attempted to reach the plaintiff. (ROR, #2, pp. 98-99.) The record further shows that after a mediation attempt between the parties, the plaintiff indicated to the Moores that he would be willing to have another contractor complete the work at hand. (ROR, #2, p. 121.)
Though the court acknowledges that the record is not entirely CT Page 3556 clear as to the precise nature of the work to be completed by the plaintiff, there is cumulative evidence in the record to suggest that the plaintiff failed to complete general contract work. Based on this cumulative evidence, there is substantial evidence in the record to support the commissioners conclusion that the plaintiff violated the Home Improvement Act by failing to complete the contracts of both the Smiths and the Moores.
 C. Restitution
The Home Improvement Act provides that "the commissioner . . . may proceed against any contractor holding a certificate . . . for an order of restitution arising from loss or damages sustained by any person by reason of such contractor's performance of or offering to perform a home improvement in this state." General Statutes § 20-432 (h). Following the formal administrative hearing required by the Home Improvement Act, the hearing officer proposed that the plaintiff make restitution in the amount of $22,882.59 to the Smiths and $18,687.05 to Charles Moore. The commissioner adopted this proposed finding in full.
As previously discussed there is substantial evidence in the record to support the commissioner's findings that the plaintiff failed to provide contracts in compliance with the provisions of the Home Improvement Act and failed to complete the contracted work. Thus, the commissioner may have found that these violations of the Home Improvement Act caused the home owners losses and damages.
The proper measure of damages for failing to complete a construction project is the cost of completion or correction by a third party. Brookfield v. Greenridge, Inc., 177 Conn. 527, 537,418 A.2d 907 (1979). In general, damages may be based on reasonable and probable estimates. DiNapoli v. Doudera,28 Conn. App. 108, 113, 609 A.2d 1061 (1992)
However, "[i]t is axiomatic, that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain." (Citations omitted; internal quotation marks omitted.) Argentinis v. Gould,219 Conn. 151, 157, 592 A.2d 378 (1991). "The concept of `actual loss' CT Page 3557 accounts for the possibility that the breach itself may result in a saving of some cost that the injured party would have incurred if he had to perform. . . . in such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages. . . ." (Citations omitted; internal quotation marks omitted) Id., 158. "It is on this ground that . . . when an owner receives a defective or incomplete building, any part of the price that is yet unpaid is deducted from the cost of completion that is awarded to him. . . ." (Citations omitted.) Id.
Keeping these principles in mind, the court will now review the awards of restitution to both the Smiths and the Moores to see if they are substantiated by substantial evidence of the record.
Under the Moores' contract, the commissioner found that the plaintiff owed restitution to the Moores in the amount of $18,607.05. For the following reasons, the court finds that this amount of restitution is not substantiated by the record.
The commissioner derived the sum of $18,687.05 as the cost of completion pursuant to proof of payment to two new contractors in the amount of $1,500 and $17,187.05. (ROR, #4.) However, the attorney for the Moores testified that the invoices for the completion amounted to $20,030 (ROR, #2, p. 120). The invoices contained in the record for this contract work, however, indicates that the amount of construction to be completed was actually $19,495. (ROR, #3, Ex. 8A, 9A, 10A, 11A.) Regardless of the figure, none of the amounts listed above include a credit for the amount still owed by the Moores to the plaintiff at the time the plaintiff stopped working on the Moore project. According to the homeowner's own exhibit, such an amount was at least $7,500. (See ROR, #3, Ex. 13A (listing credit of $7,500 and seeking damages of $14,330)).
The amount of restitution ordered to the Smiths was $22,882.59. The commissioner found that this was the amount required to complete the contracted work and to make mandatory repairs as required by the Stamford building inspector. In the case of the Smiths, the commissioner apparently did credit the damages required to complete the contract with the amount of money, $2,817.41, still owed the plaintiff by the Smiths.[4] (ROR, #4.) CT Page 3558
The application of general damage principles to the Smith contract reveals some further complications. For example, though the estimate from Jefferson Plumbing was for $8,000, the Smiths testified at the formal hearing that they did not pay this amount to Jefferson "because we're friends." (ROR, #2, p. 74.) In fact, the record seems to indicate that Jefferson was paid substantially less. (See ROR, #3, Ex. 22.)[5] Moreover, according to the estimate submitted by Bowden Home Improvements, the cost of completing a portion of the work in need of finish would be $17,300. (ROR, #3, Ex. 12.) The testimony of the Smiths during the formal hearing, however, reveals that not only was the work called for in this estimate never done, but, in fact, would not be able to be completed because of a decision by the building inspector prohibiting the completion of an individual apartment on the third floor.
Because of the difficulties in transcribing the formal hearing, the court can only guess as to the reason the work, included in Bowen's estimate; (ROR, #2, p. 79); was stopped by the decision of the building inspector.[6] However, based on previous testimony concerning the zoning of the Smiths' home for two families as opposed to three, the plaintiff's argument that the original building plan did not include a kitchen, and apparent emphasis place on the kitchen in Bowen's estimate; (ROR, #3, Ex. 12, (highlighting the kitchen plan for the third floor)); it appears that the Smiths were prohibited by zoning regulations from adding an independent unit, with a kitchen, on the third floor.
Regardless, the proposed findings of fact adopted by the commissioner do not specifically conclude to whether the contract between the plaintiff and the Smiths called for the installment of a kitchen on the third floor. In the present case, the amount of restitution ordered by the commissioner included estimates for work that, apparently because of zoning regulations, will never be — or never could be — completed. As a result of such a bizarre situation, it is necessary that the commissioner determine whether the contract actually called for the construction of a third apartment, or merely an addition as claimed by the plaintiff.
The court, accordingly, finds that the record as a whole does not support the commissioner's order of restitution in the sum of $18,687.05 to the Moores and $22,882.59 to the Smiths. In the former case, the invoices do not agree with the amount found by CT Page 3559 the commissioner and the award of restitution, whatever it is found to be, does not reflect sums of money saved by the Moores as a result of the plaintiff's failure to complete the contract. In the latter case, there appears to be a contradiction in the record as to the amount of estimates offered by the Smiths and the actual amount of money spent on the completion of the project started by the plaintiff.
The record does not contain substantial evidence to substantiate the amount of restitution decreed by the commissioner.
 VII. CONCLUSION
The record contains substantial evidence to sustain the commissioner's findings that the plaintiff violated the Home Improvement Act and failed to complete the contracts. These findings are sufficient to support an award of restitution against the plaintiff. The specific amount of these awards of restitution found by the commissioner, however, are not based on substantial evidence in the record.
As a result, the court, pursuant to §§ 4-183 (j) 4-183 (k), sustains the appeal of the plaintiff only to the extent of the amount of restitution and remands the case back to the commissioner for further proceedings.
Sylvester, J. Judge Trial Referee