******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ADAM GLANZ *v.* COMMISSIONER
OF MOTOR VEHICLES
(AC 44189)

Bright, C. J., and Alvord and Norcott, Js.

*Syllabus*

The plaintiff, who had been arrested for operating a motor vehicle while under the influence of intoxicating liquor in violation of statute (§ 14-227a), appealed to the trial court from the decision of the defendant, the Commissioner of Motor Vehicles, suspending the plaintiff's motor vehicle operator's license and requiring the installation of ignition interlock devices on his motor vehicles pursuant to statute (§ 14-227b). Following the plaintiff's arrest, a police officer administered a breath alcohol test on him four times. Although the second test yielded a higher blood alcohol content result than the first, it was invalidated. Only the first and fourth tests yielded valid results, the fourth producing a lower result than the first. At the administrative hearing before the defendant's hearing officer, the plaintiff presented the testimony of an expert, P, that the second test had been scientifically valid and that the plaintiff's blood alcohol content had been rising from the time he operated his motor vehicle to the time when the tests were performed. The hearing officer found that P's testimony was informative but not persuasive. The plaintiff appealed to the trial court, claiming that the hearing officer improperly relied on the presumption in § 14-227b (g) that the results of blood alcohol tests commenced within two hours of operation of a motor vehicle were sufficient to indicate blood alcohol content at the time of operation and that the hearing officer had ignored the exception in the criminal statute, § 14-227a (b), that, if the results of a second blood alcohol test indicated that the ratio of alcohol in the blood was 0.1 percent or less and was higher than the results of the first test, the defendant was required to show that the test results and analysis accurately reflected the plaintiff's blood alcohol content at the time of the alleged offense. The trial court rendered judgment dismissing the appeal, and the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on his claim that his right to procedural due process was violated by the administrative procedures contained in § 14-227b (g) regarding evidence of blood alcohol content in the context of a license suspension hearing: the hearing officer, having considered and found unpersuasive P's opinion that the results of the tests were unreliable, properly applied the permissive presumption that the breath alcohol test results were sufficient to indicate the plaintiff's blood alcohol content at the time of operation without the need for additional evidence; moreover, the state's interest in promoting traffic safety and performing license suspension hearings in an expeditious manner comported with the presumption in § 14-227b (g), and the plaintiff, as the subject of a license suspension hearing, was not entitled to all of the procedural protections available in a criminal proceeding, thus, the rising blood alcohol content exception in § 14-227a (b) was not applicable to the plaintiff; furthermore; substantial evidence in the record consisting of the plaintiff's valid breath alcohol test results demonstrated that his blood alcohol content was falling, not rising.

2. The trial court properly determined that § 14-227b and not § 14-227a applied to the plaintiff's administrative license suspension hearing; §14-227a (b) expressly provides that it applies to criminal prosecutions, and the plaintiff was the subject of a civil administrative license suspension hearing, which was governed by § 14-227b.

Argued October 18, 2021—officially released February 8, 2022

*Procedural History*

Appeal from the decision of the defendant suspending the plaintiff's motor vehicle operator's license and requiring the installation of ignition interlock devices

on the plaintiff's vehicles, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Morgan Paul Rueckert*, for the appellant (plaintiff).

*John M. Russo, Jr.*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiff, Adam Glanz, appeals from the judgment of the Superior Court rendered in favor of the defendant, the Commissioner of Motor Vehicles (commissioner), dismissing his appeal from the decision of the commissioner suspending his motor vehicle operator's license for forty-five days, pursuant to General Statutes § 14-227b, and requiring ignition interlock devices in his motor vehicles for six months. On appeal, the plaintiff claims that (1) the presumption in § 14-227b (g) that the results of blood alcohol tests commenced within two hours of operation shall be sufficient to indicate blood alcohol content at the time of operation violates his right to due process under the federal constitution because it does not include an exception requiring the submission of additional evidence to prove the accuracy of the blood alcohol test results in the event that such test results reveal that the operator's blood alcohol level was rising, and (2) the court erred in concluding that the rising blood alcohol exception in the criminal statute for operating a motor vehicle while under the influence of intoxicating liquor or drugs, General Statutes § 14-227a (b), did not apply to his administrative license suspension hearing. We affirm the judgment of the Superior Court.

In its memorandum of decision, the court found the following facts. "On December 1, 2019, Officer [Kevin] Geraci of the South Windsor Police Department observed a vehicle speeding, crossing the solid yellow center line of the road, and revving its engine thereby creating loud exhaust noise. The officer pulled the vehicle over at 12:47 a.m. and identified the plaintiff as its operator. The officer smelled the odor of alcohol emanating from inside the vehicle. The plaintiff then admitted to recently drinking two beers. As a result of all of the foregoing, the officer asked the plaintiff to exit the vehicle so that the officer could administer the standard field sobriety tests. During the conduct of the field sobriety tests, the plaintiff then admitted to recently drinking four beers. The plaintiff failed the standard field sobriety tests.

"In light of the foregoing, the officer arrested the plaintiff for violating . . . § 14-227a and transported the plaintiff to police headquarters. At the police headquarters, the plaintiff was read his *Miranda* rights [pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] and the implied consent advisory. The plaintiff was allowed time to contact his attorney. The plaintiff initially refused to submit to the breath alcohol test, but then changed his mind and consented. The officer administered the breath test four times to the plaintiff. The first test was administered at 1:41 a.m. and yielded a result of 0.1066. The second test was administered at 2 a.m. and yielded a result of 0.1068, but was invalidated in the final calibra-

tion check of the equipment because of the presence of alcohol in the ambient air, apparently because the officer used hand sanitizer. The third test, administered at 2:03 a.m., did not produce a result because the external standard used to calibrate the equipment failed. The fourth test, administered at 2:12 a.m., produced a result of 0.0999.''

On December 10, 2019, the plaintiff was issued a notice informing him of the suspension of his operator's license pursuant to § 14-227b unless he requested an administrative hearing.[1] The plaintiff requested such a hearing, and one was held before the commissioner's hearing officer on January 3, 2020, to determine whether the plaintiff's operator's license should be suspended. At the hearing, an A-44 form,[2] the breath alcohol test results, a narrative police report, and the plaintiff's driving history were admitted into evidence. The plaintiff also offered the testimony of Robert Powers, who has a Ph.D. in biochemistry, and a report from Powers. Powers testified that, on the basis of his assessment of the blood alcohol tests, the plaintiff's blood alcohol was rising from the time when he was operating his motor vehicle to the time when the tests were performed. He further stated that the second test was scientifically valid. After considering all the evidence, the hearing officer found the following: the police officer had probable cause to arrest the plaintiff; the plaintiff was operating a motor vehicle; the plaintiff was placed under arrest; and the plaintiff submitted to blood alcohol tests, the results of which indicated a blood alcohol content of 0.08 or more. The hearing officer also found that the expert testimony of Powers was informative but was not persuasive under § 14-227b. The hearing officer suspended the plaintiff's operator's license for forty-five days and required the installation of ignition interlock devices for six months.

The plaintiff appealed the decision of the hearing officer to the Superior Court. In his brief filed in the Superior Court, the plaintiff argued that the hearing officer improperly relied on the presumption in § 14-227b (g) to establish blood alcohol content at the time of operation and ignored the rising blood alcohol exception in the criminal statute for operating a motor vehicle under the influence of intoxicating liquor or drugs, § 14-227a (b). The court issued a memorandum of decision dismissing the appeal. The court reasoned that the criminal statute, § 14-227a (b), which governs prosecutions for operating a motor vehicle while under the influence of intoxicating liquor or drugs, did not apply. The court concluded that "[t]he statutory presumption provided for in § 14-227b (g) applies and, as a result the alcohol test results are representative of the blood alcohol content of the plaintiff at the time he was operating his motor vehicle." The court further determined that the record contains substantial evidence to support the hearing officer's findings, including that the plaintiff's

blood alcohol content was 0.08 or more at the time he was operating his motor vehicle. This appeal followed.

"[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

I

The plaintiff claims that the hearing officer's reliance on § 14-227b (g) violated his right to due process under the fourteenth amendment to the United States constitution because his blood alcohol test results indicated that he had a rising blood alcohol content, thereby showing that he had a lower blood alcohol content at the time of operation. He contends that the presumption in § 14-227b (g), that the results of blood alcohol tests commenced within two hours of operation are sufficient to demonstrate blood alcohol content at the time of operation, is unconstitutional because it does not contain an exception like its criminal statutory counterpart, § 14-227a (b).[3] We are not persuaded.

Although the plaintiff does not specify whether he is making a substantive or procedural due process claim, we interpret his claim, which concerns the constitutionality of the procedures in license suspension hearings, to invoke principles of procedural due process. Whether the plaintiff was deprived of his right to due process is a question of law over which our review is plenary. See *McFarline* v. *Mickens*, 177 Conn. App. 83, 100, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018). "The fourteenth amendment to the United States constitution provides that the [s]tate [shall not] deprive any person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the plaintiff must prove that: (1) he has been deprived of a property interest cognizable under the due process clause; and (2) the deprivation of the property interest has occurred without due process of law. . . . A driver's license, as a property interest, may not be suspended or revoked without due process of law. . . . [D]ue process . . . is not a technical conception with a fixed content unrelated to time,

place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . .

"In *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court indicated that to determine the level of procedural due process necessary, we must consider three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if any, of additional substitute procedural safeguards and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." (Citations omitted; internal quotation marks omitted.) *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 336–37, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999). "One who challenges the constitutionality of a statute bears the heavy burden of overcoming the presumption of its constitutional validity and of establishing the statute's invalidity beyond a reasonable doubt." (Internal quotation marks omitted.) *Dumont* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 635, 643, 712 A.2d 427, cert. denied, 245 Conn. 917, 717 A.2d 234 (1998).

Section 14-227b (g) provides in relevant part that administrative hearings before the commissioner "shall be limited to a determination of the following issues . . . (3) . . . did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content . . . . In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, provided such test was commenced within two hours of the time of operation. . . ."[4]

The plaintiff argues that the application of § 14-227b (g) violated his right to due process because it contains an "irrebutable, irrational, illogical and thus unconstitutional" mandatory presumption that the hearing officer find that the results of a blood alcohol test, if commenced within two hours of operation, is indicative of a plaintiff's blood alcohol content at the time of operation *without* providing for a rising blood alcohol content exception. He contends that the statutory scheme in the parallel criminal proceeding for operating a motor vehicle while under the influence includes such a rising blood alcohol content exception in § 14-227a (b) when it provides that it is a "rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense, except that if the results of the additional test indicate that the ratio of alcohol in the

blood of such defendant is ten-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and the analysis thereof accurately indicate the blood alcohol content at the time of the alleged offense." General Statutes § 14-227a (b). He argues that this exception is constitutionally required in license suspension proceedings because, without it, the state can deprive the plaintiff of a vested right based on a presumption that is "illogical and mandatory." [5]

Applying the *Matthews* v. *Eldridge*, 424 U.S. 335, criteria to the present case, we conclude that, although the plaintiff has a significant private interest in the use and enjoyment of his operator's license, the risk of erroneous deprivation from the *proper* application of the presumption in § 14-227b (g) is low. In particular, we determine, in the exercise of our plenary review over issues of statutory interpretation; see *Ives* v. *Commissioner of Motor Vehicles*, 192 Conn. App. 587, 595, 218 A.3d 72 (2019); that the presumption in § 14-227b (g) that the test results "shall be sufficient" to indicate the operator's blood alcohol content at the time of operation is not, as the plaintiff contends, mandatory. Rather, the statute, by its plain and unambiguous language that the test results "shall be sufficient," permits, but does not require, the hearing officer to infer a plaintiff's blood alcohol content at the time of operation from the blood alcohol test results alone, without the need for additional evidence. See General Statutes § 14-227b (g). As a result, the statute creates a permissive presumption. See, e.g., *Bancroft* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 391, 401–403, 710 A.2d 807 (permissive inference or presumption allows but does not require trier of fact to infer elemental fact from proof by prosecutor), cert. denied, 245 Conn. 917, 717 A.2d 234 (1998); see also *Reid* v. *Landsberger*, 123 Conn. App. 260, 283, 1 A.3d 1149 (where words of statute are plain and unambiguous, intent of drafters derived from words used), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). The presumption may be overcome if the hearing officer determines that the chemical alcohol test results are unreliable. See *Crandlemire* v. *Commissioner of Motor Vehicles*, 117 Conn. App. 832, 844–45, 982 A.2d 212 (2009). In the present case, the record reflects that the hearing officer considered and found unpersuasive Powers' opinion that the results of the chemical alcohol tests were unreliable. Thus, the hearing officer properly applied the permissive presumption that the test results accurately reflected the plaintiff's blood alcohol content at the time of operation.

Finally, the state has a significant interest in promoting public safety and in performing license suspension hearings in an expeditious manner. By permitting the results of blood alcohol tests performed within two hours of operation to be sufficient to indicate the opera-

tor's blood alcohol content at the time of operation *without* requiring the presentation of additional evidence of blood alcohol content and without creating a rebuttable presumption that requires additional evidence to be submitted to prove the accuracy of the blood alcohol tests under certain circumstances, the administrative statutory scheme promotes the state's interest in removing potentially dangerous drivers from the roadways through expeditious license suspension hearings. Although the plaintiff argues that the rising blood alcohol exception in the criminal statute counterpart should apply in civil license suspension hearings, this argument ignores the different purposes of the civil and criminal proceedings relating to operation of a motor vehicle while under the influence of intoxicating liquor or drugs. There are several procedural protections that are expressly included in the criminal counterpart, § 14-227a (b),[6] that are not included in the civil statute, however, "a license suspension hearing is not a criminal proceeding and . . . the subject of such a hearing is not entitled to all of the procedural protections that would be available in a criminal proceeding. . . . [T]he legislative history of § 14-227b reveals that a principal purpose [of] the enactment of the statute was to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process. . . . [L]icense suspension proceedings, the primary purpose of which is to promote public safety by removing those who have demonstrated a reckless disregard for the safety of others from the state's roadways [are distinguishable] from criminal proceedings, the primary purpose of which is punishment." (Citations omitted; internal quotation marks omitted.) *Do* v. *Commissioner of Motor Vehicles*, 330 Conn. 651, 679, 200 A.3d 681 (2019). The presumption in § 14-227b (g), which allows the results of blood alcohol tests *alone* to be sufficient evidence of the operator's blood alcohol content at the time of operation, comports with the state's interest in license suspension hearings, which is not punishment but, rather, the promotion of traffic safety with all dispatch compatible with due process. It also promotes the state's interest in traffic safety by allowing for the suspension of the driver's licenses of dangerous drivers who, immediately upon ingesting intoxicating liquor that will render them unable to drive safely for several hours, attempt to drive to their destination quickly before the alcohol is absorbed fully. Accordingly, the plaintiff has not demonstrated that the statute facially violates his right to procedural due process in a license suspension hearing.

The plaintiff also argues that the statutory presumption in § 14-227b (g) is unconstitutional as applied to him because the hearing officer failed to apply the rising blood alcohol content exception in his case. As noted previously in this opinion, the hearing officer considered Powers' testimony regarding the reliability of the

test results. The hearing officer simply found Powers' testimony not persuasive. Thus, the record does not reflect that the hearing officer treated the test results as mandating a finding regarding the plaintiff's blood alcohol content at the time of operation or that he disregarded out of hand the purported evidence that the plaintiff's blood alcohol content was rising.

Furthermore, there was substantial evidence in the record that the *valid* test results do not indicate a rising blood alcohol content. The first test yielded a result of 0.1066, but the second test, on which the plaintiff relies to demonstrate a rising blood alcohol content, was invalidated. The third test did not produce a result, and the fourth test yielded a blood alcohol content result of 0.0999, which is lower than the result obtained from the first test. Accordingly, because the valid test results from the first and fourth tests indicate a falling blood alcohol content, the facts underlying the plaintiff's as applied challenge to § 14-227b (g) do not exist.[7] For the foregoing reasons, we conclude that the plaintiff's right to procedural due process was not violated by the administrative procedures that are set forth in § 14-227b (g) regarding evidence of blood alcohol content in the context of a suspension hearing.

## II

Alternatively, the plaintiff claims that the court erred in concluding that the rising blood alcohol exception in the criminal statute, § 14-227a (b), did not apply to his administrative license suspension hearing.[8] We disagree.

The criminal statute, § 14-227a (b), expressly provides that it applies "in any *criminal prosecution*" for violation of § 14-227a (a), which mandates that "[n]o person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both." (Emphasis added.) The present case is not a criminal prosecution under § 14-227a (a), but rather involves a civil administrative license suspension hearing, which proceedings are governed by § 14-227b. "[T]he legislative scheme [of §§ 14-227a and 14-227b] establishes two separate and distinct proceedings. The administrative suspension of an operator's license is under the jurisdiction of the [D]epartment of [M]otor [V]ehicles and the prosecution of the underlying offense of driving while intoxicated falls within the jurisdiction of the criminal justice system. . . . It is clear that the legislative scheme of §§ 14-227a and 14-227b intended two separate and distinct proceedings, each under the jurisdiction of a different governmental branch." (Citations omitted; internal quotation marks omitted.) *State* v. *Gracia*, 51 Conn. App. 4, 10–11, 719 A.2d 1196 (1998). We conclude that the court properly determined that § 14-227b applies in the present case and properly decided that there was substantial evidence in the record to support the hearing officer's conclusion that

the plaintiff had an elevated blood alcohol content at the time of operation.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff was arrested pursuant to the criminal statute, § 14-227a, for driving under the influence, and his driver's license was suspended pursuant to the civil statute, § 14-227b.

[2] "The A-44 report form is a form approved by the [D]epartment of [M]otor [V]ehicles for processing individuals arrested for driving while under the influence of intoxicating liquor." *Paquette* v. *Hadley*, 45 Conn. App. 577, 579 n.5, 697 A.2d 691 (1997). "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." (Internal quotation marks omitted.) *Nandabalan* v. *Commissioner of Motor Vehicles*, 204 Conn. App. 457, 461 n.5, 253 A.3d 76, cert. denied, 336 Conn. 951, 251 A.3d 618 (2021); see also General Statutes § 14-227b (c).

[3] The plaintiff also claims that his right to due process under article first, § 8, of the Connecticut constitution was violated. Because the plaintiff has not provided a separate state constitutional analysis, we deem this claim abandoned. See, e.g., *State* v. *Courchesne*, 296 Conn. 622, 635 n.20, 998 A.2d 1 (2010). "In any event, [o]ur Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meanings and impose similar limitations." (Internal quotation marks omitted.) *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 335 n.6, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999).

[4] For purposes of § 14-227b, "elevated blood alcohol content" is defined as "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." General Statutes § 14-227b (n) (1).

[5] As the plaintiff notes, the rising blood alcohol exception was incorporated in the administrative proceedings under § 14-227b (g) until 2009, when the legislature, in amending the statute, removed such language. Public Acts 2009, No. 09-187, § 63.

[6] General Statutes § 14-227a (b) provides: "Except as provided in subsection (c) of this section, in any criminal prosecution for violation of subsection (a) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the Department of Emergency Services and Public Protection and was performed in accordance with the regulations adopted under subsection (d) of this section; (4) the device used for such test was checked for accuracy in accordance with the regulations adopted under subsection (d) of this section; (5) an additional chemical test of the same type was performed at least ten minutes after the initial test was performed or, if requested by the police officer for reasonable cause, an additional chemical test of a different type was performed to detect the presence of a drug or drugs other than or in addition to alcohol, provided the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented that the test was commenced within two hours of operation. In any prosecution under this section it shall be a rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such defendant is ten-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be

presented that demonstrates that the test results and the analysis thereof accurately indicate the blood alcohol content at the time of the alleged offense."

[7] Although the plaintiff argues that the unrebutted evidence from his expert, Powers, reveals that the second test was scientifically valid, the hearing officer did not find Powers to be credible. "The hearing officer is not required to believe unrebutted expert testimony, but may believe all, part or none of such unrebutted expert evidence." (Internal quotation marks omitted.) *Dumont* v. *Commissioner of Motor Vehicles*, supra, 48 Conn. App. 641.

[8] The plaintiff further argues that, in the court's alternative analysis, in which it determined that, even if the criminal statute were to apply then the rising blood alcohol exception contained therein nonetheless is not applicable, the court erred when it rounded rather than truncated the results of the second test in noting that the results of the second test were lower than the results of the first test. Because we determine that the criminal statute does not apply, we need not address this argument.