JUSTIN M. ALVORD *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 24443)

Foti, Schaller and Berdon, Js.

Argued February 17—officially released August 3, 2004

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Steven A. Tomeo,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. After a hearing, the defendant commissioner of motor vehicles ordered the suspension of the motor vehicle operator's license of the plaintiff, Justin M. Alvord, for having operated a motor vehicle while under the influence of intoxicating liquor. The plaintiff sought judicial review of the defendant's order pursuant to General Statutes § 4-183, and the trial court reinstated the plaintiff's license. On appeal, the defendant claims that substantial evidence existed in the record to support its suspension order, and, thus, the court improperly determined that the hearing officer's finding of fact that the plaintiff had a blood alcohol content (BAC) of "0.07 [percent] or more" prohibited the license suspension. We reverse the judgment of the trial court and remand this matter with direction to reinstate the defendant's suspension order.

The facts are as follows. At approximately 5:13 p.m. on January 5, 2003, Trooper Daniel Bavosi of the state police observed the plaintiff operating his motor vehicle erratically and effectuated a stop.[1] Bavosi detected a strong odor of alcohol on the plaintiff's breath, noticed that his eyes were glossy and bloodshot, and asked the plaintiff whether he had consumed any alcoholic beverages. After the plaintiff responded that he had consumed "a couple," Bavosi administered field sobriety tests. The plaintiff passed the alphabet and walk-turn tests, but failed the horizontal gaze nystagmus and the one-leg stand tests. Bavosi arrested the plaintiff for

---

[1] Bavosi testified that before he stopped the plaintiff's vehicle, he saw the defendant on Interstate 395 "making several tight swerves within the line" and then "cross the fog line . . . ."

operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[2]

At the state police barracks, the plaintiff submitted to Breathalyzer tests. The first test, administered at 6:04 p.m., indicated a BAC of 0.152 percent; the second test, administered approximately thirty-one minutes later, indicated a BAC of 0.126 percent. Consequently, the defendant suspended the plaintiff's license for nine months in accordance with § 14-227b.[3] Pursuant to the plaintiff's request under § 14-227b (e), the department of motor vehicles provided an administrative hearing in accordance with § 14-227b (g) to allow the plaintiff to contest his license suspension. Acting on behalf of the defendant, the hearing officer found, inter alia, that the plaintiff had "submitted to the test or analysis and the results indicated a BAC of 0.07 [percent] or more."[4]

[2] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

[3] General Statutes § 14-227b (i) provides in relevant part: "The commissioner shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section . . . after a hearing, the commissioner held pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders a decision, whichever is later, for a period of . . . (2) if such person has previously had such person's operator's license or nonresident operating privilege suspended under this section, (A) except as provided in subparagraph (B) of this subdivision, nine months if such person submitted to a test or analysis and the results of such test or analysis indicated that such person had an elevated blood alcohol content . . . ."

[4] It is noteworthy that prior to July 1, 2002, General Statutes § 14-227a (a) included a subparagraph that stated that if a person had a prior conviction under the statute, that person violated the statute if his BAC was above

Accordingly, the defendant ordered the suspension of the plaintiff's license.

The plaintiff appealed to the trial court from the defendant's order pursuant to § 4-183 (a). The court sustained the plaintiff's appeal because the hearing officer's finding that the plaintiff's BAC was "0.07 [percent] or more" failed to satisfy the 0.08 percent BAC requirement, as provided in § 14-227a (a). This appeal followed.

"[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . *Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

The defendant claims that because all four suspension criteria set forth in § 14-227b (g)[5] were satisfied, the

seven-hundredths of 1 percent. The plaintiff here had a previous conviction under the statute.

[5] General Statues § 14-227b (g) provides in relevant part that the hearing to contest the defendant's suspension decision "shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated

court improperly overturned the defendant's decision to suspend the plaintiff's license.[6] At issue in the present case is the third criterion set forth in § 14-227b (g), namely, whether substantial evidence existed in the record to support the defendant's finding that the plaintiff had operated a motor vehicle with a BAC of 0.08 percent or more. Although the defendant found that the plaintiff "submitted to [Breathalyzer tests] and the results indicated a BAC of 0.07 [percent] or more," our review of the record indicates that substantial evidence existed to support the defendant's conclusion that the plaintiff operated a motor vehicle while he had an elevated blood alcohol content.

Bavosi testified that the plaintiff failed the horizontal gaze nystagmus and the one-leg stand field sobriety tests. Further, the plaintiff submitted to Breathalyzer tests, the results of which indicated a BAC of 0.152 percent and 0.126 percent, respectively.[7] "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343. In this case,

that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ."

[6] General Statutes § 14-227b (h) provides in relevant part: "If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative . . . the commissioner shall affirm the suspension . . . for the appropriate period specified in subsection (i) of this section. . . ."

[7] The dissent argues that this case should be remanded to the trial court to consider whether the defendant abused its discretion by failing to grant the plaintiff's petition for reconsideration. The dissent refers to an unsworn letter of a "Dr. James E. O'Brien, Ph.D., M.D.," which is attached to the petition for reconsideration. The letter does not indicate how O'Brien was trained or why he was qualified to comment on this matter. In any event, the plaintiff did not amend his appeal to the trial court to challenge the defendant's denial of the petition for reconsideration. It would, therefore, be inappropriate to remand this issue to the trial court.

the plaintiff's Breathalyzer test results clearly were in excess of the 0.08 percent elevated BAC requirement set forth in § 14-227a (a). On the basis of the foregoing, we conclude that the defendant's order to suspend the plaintiff's license was reasonably supported by the evidence and it must be sustained.

The judgment is reversed and the case is remanded with direction to reinstate the defendant's order suspending the plaintiff's license.

In this opinion FOTI, J., concurred.

BERDON, J., dissenting. I would affirm the judgment of the trial court ordering the reinstatement of the plaintiff's motor vehicle operator's license. Accordingly, I dissent.

The plaintiff, Justin M. Alvord, sought an administrative hearing, in accordance with General Statutes § 14-227b (g), in order to obtain the return of his license. Pursuant to § 14-227b (g), the hearing "shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating a motor vehicle." General Statutes § 14-227a (a) defines "elevated blood alcohol content" as the "ratio of alcohol in the blood of such person that is *eight-hundredths of one per cent* or more of alcohol, by weight." (Emphasis added.)

"If, after such hearing, the [defendant commissioner of motor vehicles] finds on any one of the said issues in the negative, the commissioner *shall* reinstate such license or operating privilege. . . ." (Emphasis added.) General Statutes § 14-227b (h).

The statutes are crystal clear. Unless the defendant finds that the operator's blood alcohol content (BAC) was eight-hundredths of 1 percent or more, the defendant shall reinstate the operator's license. The defendant's only finding with respect to the plaintiff's BAC in this case was "0.07 [percent] or more." Because the defendant failed to find that the plaintiff's BAC was 0.08 percent or more, the defendant, according to § 14-227b (h), must reinstate the plaintiff's license.

The majority excuses the defendant's failure to find that the plaintiff had a BAC of 0.08 percent or more because there is "substantial evidence [in the record] to support the defendant's conclusion that the plaintiff operated a motor vehicle while he had an elevated blood alcohol content." Nevertheless, the majority's reliance on the evidence in the record cannot control the outcome of this case for several reasons.

First, as previously pointed out, § 14-227b (h) mandates that the plaintiff's license be reinstated on the defendant's failure to find any one of the issues required under § 14-227b (g). A finding that an operator's BAC is "0.07 [percent] or more" does not satisfy a finding that the operator had an elevated blood alcohol content, as statutorily required. The legislature recently enacted Public Acts 2003, No. 03-154, which directs the court, including this appellate court, to give effect to the plain and unambiguous words of a statute. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable

results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154.

"We cannot ignore the plain wording of the statute." *State* v. *Lemoine*, 256 Conn. 193, 207, 770 A.2d 491 (2001). "It is plain error for the trial court [and this appellate court] to fail to apply an applicable statute." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 39, 699 A.2d 101 (1997). "If courts were free to pick and choose what part of a statute . . . to rely on and what part to ignore, then the courts . . . would, in effect, draft the law as well as construe its meaning." *Florez* v. *Callahan*, 156 F.3d 438, 443 (2d Cir. 1998). Indeed, by disregarding the mandate of § 14-227b (g), the plaintiff's due process rights are implicated. See *Otero* v. *New York City Housing Authority*, 484 F.2d 1122, 1135 (2d Cir. 1973).

Second, the majority looks for support in the results of two Breathalyzer tests performed on the plaintiff. The first test indicated that the plaintiff had a BAC of 0.152 percent. The second test, administered approximately thirty-one minutes later, indicated that the plaintiff had a BAC of 0.126 percent. Although the defendant found that the Breathalyzer test results "indicated a BAC of 0.07 [percent] or more," the defendant's subordinate findings make no mention of the Breathalyzer tests. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this [appellate] court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or

questions of fact." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). In other words, it is not for this court to determine the facts.

Finally, whether the plaintiff was operating his vehicle erratically, smelt of alcohol or allegedly failed a sobriety test does not support a finding that the plaintiff had a BAC of 0.08 percent or more, as required by § 14-227a (a). Indeed, contrary to the majority's "finding," the record in this case reveals that the plaintiff passed physical tests such as the walk and turn test.[1]

Accordingly, as a result of the failure of the defendant to find that the plaintiff had a BAC of 0.08 percent or more, I believe that the judgment of the trial court should be affirmed and that the defendant should be ordered to reinstate the plaintiff's license.

I also disagree with the rescript in the majority opinion. Fairness would dictate that, on remand, the trial court should determine whether the defendant incorrectly denied the plaintiff's motion to reconsider his decision on the basis of a report from James E. O'Brien, Ph.D., M.D., in which O'Brien opined that in this case, the BAC could not be determined with reasonable scientific certainty.[2]

I dissent.

---

[1] The defendant in his brief concedes that "the plaintiff successfully completed" some of the field sobriety tests.

[2] In the report that the plaintiff wanted the defendant to consider, O'Brien states in relevant part: "In regards to your inquiry as to whether or not [the plaintiff's] blood alcohol level was indeed at or above 0.08% w/w cannot be answered with reasonable scientific certainty. This is based on the fact that [the plaintiff's] blood alcohol decreased 0.026% in the 31 minutes between the two tests. This value is equivalent to a decline of 0.050% per hour. The normal decline in the alcohol level for 31 minutes would be 0.009% (0.018% per hour). A decrease of this magnitude (0.050% per hour) is almost three times the normal decline of 0.018% per hour and is most rare, if not medically impossible, to metabolize sufficient alcohol to result in such a large decline. This marked decrease can only be explained by either one or both of the

tests being incorrect. In view of this, the tests must be considered invalid and [the plaintiff's] blood alcohol level cannot be established."

The dissent does not rely on O'Brien's letter, as claimed by the majority in its footnote 7. The dissent refers to O'Brien's letter to point out that although the majority reverses the judgment of the trial court on the basis of the majority's conclusion that a BAC finding of 0.07 percent or more satisfies the statutory requirement of 0.08 percent or more, there was another issue before the trial court.

The second issue was whether the defendant abused his discretion by refusing to grant the plaintiff's petition for reconsideration, which was predicated on O'Brien's report. The trial court never reached that issue because it logically concluded that a BAC of 0.07 percent or more does not equal a BAC of 0.08 percent or more. Accordingly, even if the majority is correct, the rescript in this case should be that the matter is remanded to the trial court to consider whether the defendant abused his discretion by failing to grant the plaintiff's motion for reconsideration. The decision of the trial court foreclosed any consideration of the motion to reconsider. Certainly, the plaintiff had no reason to raise the issue after the trial court orally ruled in his favor.